UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

No. 15-16173

JENNIFER DAVIDSON,

Plaintiff-Appellant,

v.

KIMBERLY-CLARK CORPORATION, ET AL.,

Defendants-Appellees

Appeal from the Northern District of California
Case No.: 14-CV-01783 (PJH)
Hon. Judge Phyllis J. Hamilton, Presiding

**PLAINTIFF-APPELLANT'S OPENING BRIEF**

ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
KRISTEN G. SIMPLICIO (State Bar No. 263291)
GUTRIDE SAFIER LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469
Attorneys for Plaintiff-Appellant

# CORPORATE DISCLOSURE STATEMENT

Pursuant to the Federal Rules of Appellate Procedure, Rule 26.1, counsel for the Plaintiff-Appellant hereby certifies that Plaintiff is not a corporate party.

Respectfully submitted this 20th day of November, 2015.

GUTRIDE SAFIER LLP

 /s/ Seth A. Safier
_____
Adam Gutride
Seth A. Safier
Attorneys for Plaintiff-Appellant

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................1

II.     STATEMENT OF JURISDICTION ...................................................3

III.    ISSUES PRESENTED .........................................................................4

IV.     STATEMENT OF THE CASE .............................................................5

        A.      Plaintiff's Allegations .............................................................5

                1.      Reasonable Consumers Understand the Word "Flushable" To
                        Mean Suitable For Disposal By Flushing Down a Toilet..........5

                2.      Plaintiff's Experience .................................................7

                3.      Defendants' Representations About Flushability Are False. ......9

        B.      Procedural History ...............................................................11

V.      SUMMARY OF THE ARGUMENT ..................................................14

VI.     STANDARD OF REVIEW ................................................................16

VII.    ARGUMENT .......................................................................................17

        A.      Plaintiff Adequately Pleaded Her Misrepresentation and Omission
                Based Claims. ........................................................................17

        B.      The District Court Erred When it Held that Plaintiff Had Suffered No
                Damages..................................................................................29

        C.      The District Court Erred By Requiring Plaintiff to Plead "How She
                Came to Believe" the Wipes Were Not Flushable............................32

        D.      The District Court Erred When It Granted Defendants' Motion to
                Strike. .....................................................................................35

E.    The District Court Erred By Denying Leave to Amend. ....................37

F.    Plaintiff Has Article III Standing to Pursue Injunctive Relief. ...........40

      1.    Plaintiff Has Alleged Injury to Her Ability to Rely on
            Defendants' Labels In the Future. ...............................................42

      2.    Defendants' Invasion of Plaintiff's Statutory Right to Receive
            Truthful Advertising and Labeling Materials Provides Article
            III Standing. ...............................................................................49

            (a)    The Invasion of a Statutory Right Constitutes an Article
                   III Injury In Fact. ..........................................................49

            (b)    California's Consumer Protection Laws Create a
                   Statutory Right to Receive Truthful Information From
                   Sellers About Their Products. .......................................52

            (c)    The Statutory Right to Receive Truthful Information
                   Protects against Individualized Harm, and Plaintiff is
                   Likely to be Among Those Injured in Absence of an
                   Injunction. ...................................................................55

VIII.  CONCLUSION ...........................................................................56

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005)................................................41, 45

*Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306 (C.D. Cal. 2013) ..27

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)....................................................17

*Block v. eBay, Inc.*, 747 F.3d 1135 (9th Cir. 2014) ................................32

*Boyle v. United Tech. Corp.* 487 U.S. 500 (1988)....................................45

*California v. Northern Trust Corp.*, 2013 WL 1561460 (C.D. Cal. Apr. 10, 2013) ................................................................................................49

*Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007).................49

*Chavez v. Blue Sky Natural Beverage Co.*, 340 F. App'x 359 (9th Cir. 2009)........30

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)....................................40

*Clancy v. The Bromley Tea Co.*, 2013 WL 4081632 (N.D. Cal. Aug. 9, 2013)......33

*Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663 (2006) ..................18

*Daugherty v. American Honda Motor Car Co., Inc.*, 144 Cal. App. 4th 824 (2006) ................................................................................................25

*Dean v. Colgate-Palmolive Co.*, No. EDCV 15-0107 JGB, 2015 WL 3999313 (C.D. Cal. June 17, 2015) ........................................................44, 45

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir.2003) ................37

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir. 1993) *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)....................................36

*Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011) ...........................50

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119 (9th Cir. 2014) ................................................................................................................31

*Fulfillment Servs. Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614 (9th Cir. 2008) ................................................................................................................53

*Gilley v. Atl. Richfield Co.*, 2005 WL 3671220 (9th Cir. June 27, 2005) ..............37

*Hanna v. Plumer*, 380 U.S. 460 (1965).............................................................45, 46

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)...........................50, 51, 55

*In re Cty. of Orange*, 784 F.3d 520 (9th Cir. 2015) ................................................48

*In re GlenFed, Inc.*, 42 F.3d 1541 (9th Cir. 1994) (en banc) .................................33

*In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145 (2010)................21, 39

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ....................................................46

*In the Matter of Nice-Pak Products, Inc.,* FTC Docket No. C-4556, Oct. 30, 2015 ................................................................................................................6

*Kearns v. Ford Motor Co.,* 567 F.3d 1120 (9th Cir. 2009).....................................27

*Klein v. Chevron U.S.A., Inc.*, 202 Cal.App.4th 1342 (2012) ................................31

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)................................30, 31

*Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997 (9th Cir. 2001)....................................47, 49

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)...........................37, 49, 50, 56

*Ma v. Reno*, 114 F.3d 128 (9th Cir.1997)...............................................................16

*Machlan v. Procter & Gamble Co.*, 77 F.Supp.3d 954 (N.D. Cal. Jan. 7, 2015)....49

*Morgan v. AT & T Wireless Svcs., Inc.*, 177 Cal.App.4th 1235 (2009) .................19

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ...............................................................43

*People v Wahl*, 39 Cal.App.2d Supp. 771 (1940) ................................................19

*Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959 (9th Cir. 2014) .............................17

*Pulaski and Middleman LLC v. Google, Inc.*, 2015 WL 5515617, ___ F.3d ___
    (9th Cir. Sept. 21, 2015) ................................................................................32

*Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d. 181 (D.D.C. 2013) ...........43, 44

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012)....42, 44, 45

*Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979 (2004) ..........................20

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)........................................49, 56

*Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109 (9th Cir. 2014)
    ................................................................................................50, 52, 55, 56

*Tripodi v. Harveys Tahoe Mgmt. Co.*, 240 F. App'x 219 (9th Cir. 2007) ..............33

*United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) ..........16, 17, 19

*Warth v. Seldin,* 422 U.S. 490 (1975)......................................................................53

*Weidenhamer v. Expedia, Inc.*, No. C14-1239RAJ, 2015 WL 1292978
    (W.D. Wash. Mar. 23, 2015) ..............................................................42, 44, 45

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010)................17, 36

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008) ......................18, 19

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039
    (9th Cir. 2011) ................................................................................................17

## **Statutes**

28 U.S.C. § 1291 ......................................................................................................4

28 U.S.C. § 1332 ......................................................................................................3

28 U.S.C. § 1441 ......................................................................................................3

28 U.S.C. § 1453 .................................................................................4

28 U.S.C. §1446 .................................................................................4

Cal. Bus & Prof. Code § 17203 ..............................................33, 35, 61

Cal. Bus & Prof. Code § 17204 ..............................................35, 52, 61

Cal. Bus & Prof. Code § 17535 ......................................................35

Cal. Bus. & Prof. Code §§ 17200 et. seq. ...........................................2

Cal. Bus. & Prof. Code §§ 17500 et. seq. ...........................................2

Cal. Civ. Code § 1780(a) ..........................................................33, 35, 61

Cal. Civ. Code §§ 1750 et. seq. .........................................................2

Cal. Civ. Code. § 1770 .........................................................58, 61

*In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 319 (2009) ......................53

*Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001–02 (9th Cir. 2001)...................54, 55

## Regulations

California Code of Regulations, Title 24, Part 5, Chapter 3, California Building
    Standards Commission .................................................7, 13, 23, 44

# I.    INTRODUCTION

Plaintiff-Appellant Jennifer Davidson appeals from the district court's dismissal with prejudice of her claims for false advertising against Defendants-Appellees Kimberly-Clark Corporation; Kimberly-Clark Worldwide, Inc.; and Kimberly-Clark Global Sales, LLC ("Defendants"). Defendants manufacture pre-moistened wipes that can be used for personal hygiene, child care, pet care, or cleaning. Among these products are four brands of wipes that Defendants tout as "FLUSHABLE."[1] Plaintiff alleges that the wipes are not flushable, as they are not suitable for disposal by flushing down a toilet, because the wipes do not disperse in water. As a result, they risk damage to household pipes and cause havoc at municipal sewage treatment facilities. Plaintiff further alleges that, had Defendants not falsely advertised the wipes, she would never have purchased them but instead would have paid less for regular, non-"flushable" wipes. Plaintiff sued on behalf of herself and a proposed class of similarly situated California consumers, for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et. seq.; False Advertising Law ("FAL"), Cal. Bus. & Prof. Code

---

[1] The four brands are Scott Naturals® Flushable Moist Wipes, Kleenex® Cottonelle® Fresh Care Flushable Wipes & Cleansing Cloths, Huggies ® Pull-Ups® Flushable Moist Wipes, and U by Kotex® Refresh Flushable Wipes. (ER 75 ¶ 17.)

§§ 17500 et. seq.; Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et. seq.; and for common law fraud.

The district court entered two contradictory and inconsistent orders of dismissal (the second one with prejudice) and an order denying reconsideration. In its first order, the district court dismissed on the ground that Plaintiff had not adequately pleaded reliance, because she had not pleaded how she "came to believe" that the wipes were not truly "flushable." In the second order, the court identified different deficiencies, this time holding that Plaintiff had not sufficiently pleaded actual "falsity" of the misrepresentation, and that Plaintiff had inadequately pleaded damages. With respect to damages, the court's conclusion was directly contrary to its first order, where it held that Plaintiff had properly alleged an economic injury in that she paid a premium as a result of Defendants' "flushable" representation. Despite changing its reasoning and identifying new purported deficiencies for the first time in its second order, the district court denied leave to amend.

In dismissing Plaintiff's claims, the district court committed multiple errors that this Court should reverse. By holding that Plaintiff failed to adequately plead that Defendants' "flushable" label is false, the district court erroneously rejected Plaintiff's numerous and detailed factual allegations establishing that Defendants' wipes are unsuitable for flushing, as they fail to disperse (*i.e.* break apart) and

cause clogs and problems with sewer systems. In particular, the district court erred by failing to assume the facts Plaintiff alleged were true; failing to properly apply the *Twombly* plausibility standard; refusing to draw reasonable inferences in favor of the Plaintiff; and conflating the issue of falsity with whether Plaintiff had personally suffered any damage to her plumbing. By subsequently holding that Plaintiff had not adequately pleaded damages, the district court not only went back on its prior ruling, but also ignored clear precedent establishing that Plaintiff's economic injury—paying a premium for a product she would not have purchased—is sufficient.

## II.    STATEMENT OF JURISDICTION

Plaintiff filed her complaint in the San Francisco Superior Court on March 13, 2014. Defendants removed the case on April 17, 2014, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332, 1441, 1446, and 1453. On December 19, 2014, the district court entered an order dismissing the action with prejudice. Within 28 days of the judgment, on January 16, 2015, Plaintiff filed a motion for reconsideration under Rules 59 and 60 of the Federal Rules of Civil Procedure. On May 15, 2015, the district court entered an order denying reconsideration. Plaintiff timely filed a notice of appeal on June 11, 2015. Because the district court's order finally disposed of this case, jurisdiction is conferred on this Court by 28 U.S.C. § 1291.

## III.   ISSUES PRESENTED

The issues to be decided on this appeal are:

1.      Plaintiff pleaded that Defendants' wipes are not suitable for disposal by flushing down a toilet because they fail to disperse (break apart or disintegrate) upon flushing, and, as a result, can clog pipes and damage sewer and septic systems. Did the district court err when it held that Plaintiff had not adequately pleaded under Rule 9(b) why the designation "flushable" was false and misleading?

2.      Plaintiff pleaded she would not have purchased or paid a premium for Defendants wipes if Defendants had not misrepresented that the wipes were "flushable." Did the district court err when it held that Plaintiff had failed to allege cognizable damages because she had not "experienced any harm resulting from product use," meaning she had not alleged that the wipes "caused problems with her plumbing system, or even issues with her sewer system"?

3.      The district court dismissed Plaintiff's claims in part under Rule 9(b) because Plaintiff had failed to plead reliance with particularly in that she had not adequately pleaded how she "came to believe" the "flushable" designation was false. Did the district court err in imposing this requirement?

4.      To support her allegation that Defendants' wipes can cause clogs and damage sewer and septic systems, Plaintiff pleaded that news articles had

4

documented damage caused by "flushable" wipes and attributed the cause of the problems to the inability of purportedly "flushable" wipes to break apart and disperse after flushing. Did the district court err when it struck the news story allegations from the complaint as irrelevant and immaterial?

5.     The district court entered two orders of dismissal. In the first, it held that Plaintiff had adequately pleaded economic injury but had inadequately pleaded reliance. In the second, it identified different and contrary deficiencies, holding that Plaintiff had not sufficiently pleaded falsity or damages. Did the district court err in denying leave to amend in its second order?

6.     Plaintiff pleaded that she continues to shop for wipes from Defendants that are suitable for disposal down a toilet, but that, due to Defendants' use of the term "flushable" to describe wipes that are not suitable for disposal down a toilet, Plaintiff will continue to receive false information from Defendants and will be unable to rely on Defendants' labels. Did the district court err by holding that Plaintiff lacks Article III standing to seek injunctive relief?

## IV.    STATEMENT OF THE CASE

### A.    Plaintiff's Allegations

#### 1.    Reasonable Consumers Understand the Word "Flushable" To Mean Suitable For Disposal By Flushing Down a Toilet.

Reasonable consumers understand the word "flushable" to mean "suitable for disposal by flushing down a toilet," as opposed to merely "capable" of passing

from the toilet to the pipes. (ER 80 ¶ 31–32.) Although some items are capable of

being flushed (such as newspapers, small toys, jewelry), such items are not suitable

for flushing and thus could not properly be marketed as "flushable." (Id.) Indeed,

"suitab[ility] for disposable by flushing down a toilet" is the only commonly used

definition of the term "flushable" according to dictionary editors whose job is to

determine such usage. (Id. ¶ 33.) Plaintiff's definition of "flushable" is also

consistent with water treatment professionals' usage, who agree that anything

labeled as flushable "should start to break apart during the flush and completely

disperse within 5 minutes." (Id. ¶ 34.) Plaintiff's definition is also required by

section 305.1 of the California Plumbing Code, which makes it unlawful to flush

any "thing whatsoever that is *capable* of causing damage to the drainage system or

public sewer." California Code of Regulations, Title 24, Part 5, Chapter 3,

California Building Standards Commission (emphasis added) ("Plumbing Code").

(ER 65.)[2]

---

[2] Consistent with this definition, the Federal Trade Commission recently entered into a consent judgment with another wipes manufacturer prohibiting use of the word "flushable" unless the product "disperses in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment." Further, the ability to disperse must be demonstrated by testing that "substantially replicate[s] the physical conditions of …all environments in which the product will likely be disposed of." *In the Matter of Nice-Pak Products, Inc.,* FTC Docket No. C-4556, Oct. 30, 2015.

Defendants' own marketing statements demonstrate that Defendants intend for consumers to understand that the word "flushable" means that the wipes are not merely capable of passing through a toilet, but are suitable for disposal via flushing. (ER 81 ¶ 35.) For example, the wipes' packaging states that they are "sewer and septic system safe" (ER 75–78, 81 ¶¶ 20–23, 35) and Defendants' websites say the products are "compatible with on-site septic and municipal treatment" and "break up when moving through the system after flushing." (ER 81 ¶ 35.) Defendants also highlight that their flushability testing protocols purport to measure not only whether the wipes *can* flush down a toilet, but how they perform throughout the sewage treatment system. (Id.)

### 2.   Plaintiff's Experience

In 2013, Plaintiff desired to purchase moist wipes for household use. (ER 89 ¶ 52.) While shopping at a Safeway in San Francisco, Plaintiff came across Defendants' Scott Naturals® Flushable Moist Wipes. (Id.) Seeing that the product had the word "Flushable" on the front of the package and that it was more expensive than other wipes without that word, Plaintiff believed the product was specially designed to be suitable for flushing down her toilet. (Id.) Plaintiff was concerned that products not suitable for flushing could cause problems in her plumbing or at the water treatment plant, as she had previously visited San Francisco's sewage treatment plant during a school trip and learned that flushing

non-flushable items causes many problems. (Id.) Because Plaintiff did not wish to damage her plumbing, city property, or the environment, Plaintiff reviewed both the front and back of the package. (Id.) She saw nothing that led her to believe the wipes were unsuitable for flushing. (Id.) Believing it would be easier and more sanitary to flush wipes than to put them in the garbage, she decided to pay the premium price for the Scott wipes. (Id.) Had Defendants not falsely represented that their wipes were "flushable," and had they not omitted the fact that the wipes were not *suitable* for disposal by flushing, Plaintiff would not have purchased the product or, alternatively, would have paid less for them. (ER 90 ¶ 56.)

When Plaintiff began to use the wipes, she noticed that each wipe felt very sturdy and thick, unlike toilet paper. (ER 89 ¶ 53.) She also noticed that the wipes did not break up in the toilet bowl like toilet paper, but rather, remained whole. (Id.) After several uses during which she observed the wipes' failure to break apart, she became concerned that the wipes were not truly flushable. (Id.) Thus, she stopped flushing the wipes and stopped using the product altogether. (Id.)

A few months later, Plaintiff investigated the matter further and learned of the widespread damage to consumers' home plumbing and to municipal sewer systems resulting from consumers flushing the wipes. (ER 89–90 ¶ 54.) The research increased her concerns that the wipes were not appropriate for disposal by flushing down a toilet. (Id.)

Plaintiff continues to desire to purchase wipes that are suitable for disposal in a household toilet. (ER 90 ¶ 57.) She would purchase truly flushable wipes the Defendants manufactured if she could determine prior to purchase that the wipes were suitable to be flushed. (Id.) She regularly visits stores such as Safeway, which sell Defendants' "flushable" wipes, but she cannot determine the flushability of those wipes unless she purchases and opens a package to feel the thickness of the paper to see if it degrades in her toilet. (Id.) Plaintiff knows that Defendants may change the design and construction of their wipes over time, as they use different technologies or respond to pressure from regulators, competitors, or environmental organizations. (Id.) But as long as Defendants may use the word "flushable" to describe non-flushable wipes, Plaintiff continues to have no way to determine whether the representation "flushable" is true when presented with Defendants' packaging in the store. (Id.)

### 3. Defendants' Representations About Flushability Are False.

Defendants' wipes are not suitable for disposal down a household toilet. (ER 83 ¶ 39.) Defendants manufacture the wipes using a proprietary paper constructed of strong knots of fiber designed to withstand months of soaking in wet lotion inside the package and then to be durable for wiping. (Id. ¶ 40.) Therefore the wipes are not capable of breaking down when submersed in the toilet. (Id.) As a result, the wipes cause widespread problems for consumers and for public utilities,

clogging home pipes and wastewater treatment systems. (ER 86–89, 90-91 ¶¶ 48–51, 58.) One major problem is that, since the wipes do not disperse, they tend to clump and tangle with each other and with other debris to form long ropes in a process called "ragging," which blocks pipes and clogs impellers. (ER 85 ¶ 46.) The city of Bakersfield, California specifically tested Defendants' Cottonelle wipes, and found that they did not break apart in the sewer but instead created giant clogs at the treatment plant. (ER 86–87 ¶ 49.) Another city has issued a consumer alert advising citizens that Defendants' Scott wipes were falsely advertised due to their propensity to clog pipes. (ER 87–88 ¶ 50.)

Defendants justify their false claim of "flushability" by running their wipes through a series of self-serving tests designed by a manufacturers' lobbying association that fights aggressively against governmental efforts to regulate use of the word "flushable." (ER 83 ¶ 41.) The tests do not meet standards set by municipal water districts and are highly flawed. (Id.) Despite Defendants' claims, the tests do not actually measure whether the wipes are suitable for flushing. (ER 83–86 ¶¶ 41–47.) For example, Defendants note that their products pass the "Slosh Box Disintegration Test," which purportedly "[a]ssesses the potential for a product to disintegrate (or break up) when it is subjected to mechanical agitation in water." (ER 83–84 ¶ 42.) But this test requires only that after **three hours of agitation** in the slosh box, more than **25%** of the wipe passes through a 12.5 millimeter

(roughly a half inch) sieve **80%** of the time. (Id.) In other words, the test is still

*passed even if after more than **three hours** of agitation, nearly **three-quarters** of the material is **unable** to pass through the pipe*. (Id.) In the real world, a wipe will be subjected to only a few seconds of agitation in the toilet, and may reach the sewage treatment plant within less than an hour. (ER 84–85 ¶¶ 44–45) Other tests similarly assume, falsely, that only a single wipe will reach the treatment plant every ten seconds, when in fact wipes tend to attach to each other and form long ropes comprising dozens or hundreds of wipes before they encounter the equipment. (ER 83–86 ¶¶ 42–47.) Because of their propensity to cause damage to the sewage treatment system, flushing Defendants' wipes violates section 305.1 of the California Plumbing Code, which provides that:

> It shall be unlawful for a person to deposit, by any means whatsoever, into a plumbing fixture…which is connected to a drainage system, public sewer, private sewer, septic tank, or cesspool, any …. thing whatsoever that is *capable* of causing damage to the drainage system or public sewer.

Plumbing Code (emphasis added) (ER 65).

### B.     Procedural History

On August 8, 2014, the district court ruled on Defendants' Motions to Dismiss and Strike, granting and denying them in part under Rules 12(b)(1), 12(b)(6), and 12(f). (ER 53 ("First Order").) The district court held that Plaintiff did not have Article III standing to pursue injunctive relief because she "does not

allege that she intends to purchase the same Scott Naturals® product again" and, moreover that, "as she has now decided that the Scott Naturals® wipes are not 'flushable,' she will be unable to allege with regard to any future purchase of the same product, that she purchased it in reliance on the 'flushable' label." (ER 40–41.) The district court did hold, however, that Plaintiff had standing to sue for monetary relief because she suffered an economic injury by paying a premium for the wipes in reliance on the Defendants' "flushable" representation. (ER 37–38.) In addition, the district court held that Plaintiff failed to satisfy Rule 9(b) in pleading the reliance element of her claims, concluding that "plaintiff has not alleged facts showing how she came to believe that the Scott Naturals® wipes were not 'flushable.'" (ER 47.) The district court also granted Defendants' motion to strike from the complaint "allegations citing on-line articles/reports and websites discussing harm caused by 'flushable' wipes to municipal treatment plants." (ER 52). The court reasoned that those allegations were "irrelevant and immaterial, particularly because plaintiff [did] not allege that she read or even was aware of such articles and websites." (Id.)

Plaintiff filed her First Amended Complaint ("FAC") on September 5, 2014. (ER 72.) In the FAC, Plaintiff provided additional information about how she "came to believe" that the wipes were flushable, including what she observed upon using the wipes and what she learned in her subsequent research. (ER 89-90.) She

also repleaded allegations about a subset of the news articles which had specifically identified problems with Defendants' wipes. (ER 86-88.) Defendants moved again to dismiss and strike. (ER 19) The district court granted the motion to dismiss with prejudice and denied the motion to strike as moot. (ER 32 ("Second Order").) The district court based its dismissal on two grounds, neither of which formed the basis for the first dismissal: (1) the court held that, under Rule 9(b), Plaintiff had failed to allege with particularly "why the designation 'flushable' is false as applied to the Kimberly-Clark products at issue;" and (2) the court held that Plaintiff had failed to allege damage because she had not "experienced any harm resulting from product use," meaning she had not alleged that the wipes "caused problems with her plumbing system, or even issues with her sewer system." (ER 30–31.) The district court had not previously identified any need for further allegations regarding falsity or how Plaintiff was damaged, but had previously ruled that Plaintiff had adequately alleged an economic injury.

Within 28 days of the judgment, on January 16, 2015, Plaintiff filed a motion for reconsideration, contending that the district court's orders were inconsistent and that at minimum, Plaintiff should be granted leave to amend to address the district court's newly identified deficiencies. (ER 2.) On May 15, 2015, the district court entered an order denying reconsideration. (ER 14.) The district court stated that further leave to amend was unwarranted, because it had provided

notice in the first order that the complaint did not sufficiently allege "falsity" when, in dismissing on reliance grounds, "the court explained that plaintiff did not allege that she was unable to flush the product down the toilet, or that the product caused any problems with her pipes." (ER 9.) The district court then justified its holding that Plaintiff suffered no damages despite its previous ruling that Plaintiff had adequately pleaded economic injury, because "the court was not referring to standing to sue when it found that plaintiff had not suffered damages, but rather was responding to Kimberly-Clark's argument that the FAC failed to state a claim under any of the four causes of action because (among other things) it did not plead facts showing that plaintiff suffered any damages." (ER 13.)

Plaintiff timely filed a notice of appeal on June 11, 2015. (ER 54–58.)

## V.    SUMMARY OF THE ARGUMENT

The district court erred when it held that Plaintiff had not adequately pleaded under Rule 9(b) why the designation "flushable" was false. Plaintiff pleaded that Defendants' wipes are not suitable for disposal by flushing because they fail to disperse and, as a result, can clog pipes and damage sewer and septic systems. Plaintiff's allegations were not merely "conclusory," but were supported by specific and detailed factual allegations. The district court improperly focused on whether Plaintiff had personally suffered plumbing damage, refused to evaluate

Plaintiff's claims under the "facial plausibility" standard and failed to draw reasonable inferences in her favor.

The district court erred when it held that Plaintiff had failed to allege cognizable damages because she had not "experienced any harm" to her household pipes. Plaintiff pleaded she would not have purchased Defendants wipes, or, at a minimum would not have paid a premium for them, if Defendants had not misrepresented that the wipes were "flushable." Clear precedent holds that this is a sufficient injury.

The district court erred when it held that Plaintiff had not adequately pleaded reliance under Rule 9(b) because Plaintiff had not pleaded how she "came to believe" the "flushable" designation was false. No rule or law imposes such a pleading requirement in a false advertising case, and even if there were such a requirement, Plaintiff met it by pleading she observed that the wipes were thick and sturdy, unlike toilet paper, that they did not break apart upon flushing like toilet paper, and that she had subsequently read about damage to sewer systems from "flushable" wipes.

The district court erred when it struck from Plaintiff's complaint, on the ground of "irrelevance," allegations regarding news stories that "flushable" wipes can cause clogs and damage sewer and septic systems because they fail to disperse.

The district court erred when it dismissed without granting leave to amend, particularly as its second order of dismissal was on grounds different from, and contradictory to, the first.

The district court erred by holding that plaintiff lacks Article III standing to seek injunctive relief. Plaintiff pleaded that she continues to shop for wipes that are suitable for disposal down a toilet, but that, due to Defendants' misuse of the term "flushable," she continues to be misinformed by Defendants' labels. The district court erred by requiring Plaintiff to plead that she will once again be duped into buying the same product. Plaintiff has standing both because she is likely to be misled about other products and because she has a statutory right under California's consumer protection laws to receive truthful information. Under the district court's holding, no plaintiff in a consumer fraud class action could ever seek injunctive relief.

## VI.   STANDARD OF REVIEW

This Court reviews a district court's dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction *de novo*. *Ma v. Reno*, 114 F.3d 128, 130 (9th Cir.1997). This Court also reviews a district court's rule 12(b)(6) dismissal *de novo*. *United States v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011). Dismissal is improper if the complaint contains "sufficient factual matter" that, "taken as true," states a claim for relief that is "plausible on its face." *Id.* (citing

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* This Court reviews a district court's decision to dismiss with prejudice for abuse of discretion. *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1048 (9th Cir. 2011).

When a district court grants a motion "to strike the pleadings under Rule 12(f)," this Court reviews the decision of whether to strike for "abuse of discretion." *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014). However, whether Rule 12(f) "authorizes the district court to strike such matter at all" is a purely legal issue this Court reviews *de novo. Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

## VII. ARGUMENT

### A. Plaintiff Adequately Pleaded Her Misrepresentation and Omission Based Claims.

In its Second Order, the district court held that "the complaint must be dismissed under Rule 9(b)" because Plaintiff failed "to plead facts showing why the designation 'flushable' is false as applied to the Kimberly-Clark products at issue." (ER 31.) According to the district court, Plaintiff alleged merely "that using

17

the designation 'flushable' is false because the wipes are not flushable—in other words, saying that the wipes are 'flushable' is false because it is not true. That is simply a circular argument, not an explanation of why the designation is false." (Id.) But to reach this conclusion, the district court erroneously rejected Plaintiff's numerous, detailed factual allegations establishing that Defendants' wipes fail to disperse and therefore cause clogs and problems with sewer and septic systems. (E.g., ER 80-89 ¶¶ 31-51.) In particular, the district court erred by failing to assume the facts Plaintiff alleged were true; failing to properly apply the *Twombly* plausibility standard; refusing to draw reasonable inferences in favor of Plaintiff; conflating the issue of falsity with whether Plaintiff had personally suffered any damage to her pipes; and placing too much emphasis on its assumption that the representation was "literally true" because the wipes were "capable of being flushed," without accounting for whether the representation was likely to deceive reasonable consumers.

Under the UCL, FAL, and CLRA, Plaintiff is required to plead only that a representation is likely to mislead reasonable consumers. *See Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (holding that, to prevail on UCL and CLRA claims, plaintiff need only "show that members of the public are likely to be deceived"); *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680, 682 (2006) (holding that the FAL prohibits advertising that "has a capacity,

likelihood or tendency to deceive or confuse the public," and that the CLRA prohibits "[c]onduct that is 'likely to mislead a reasonable consumer'"). These laws prohibit "'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams*, 552 at 938 (citations omitted); *see, also*, *Morgan v. AT & T Wireless Svcs., Inc.*, 177 Cal.App.4th 1235, 1255 (2009) ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL.") (citation and internal quotation marks omitted). For example, in, *People v Wahl*, 39 Cal.App.2d Supp. 771 (1940), the challenged advertisement noted that "tubes were 50% off regular first-line tube list price." *Id*. at 773. But the tubes for sale were third-line tubes, not first-line tubes. *Id.* Thus, while the advertisement was literally true, the court found it "deceptive and misleading." *Id*. at 773-74.

Plaintiff's theory of liability under California's consumer protection statutes is that Defendants' use of the term "flushable" on their wipes is likely to mislead reasonable consumers into believing that the wipes are "suitable for disposal by flushing down a toilet," when, in fact, those wipes are not suitable for disposal down a toilet. Plaintiff pleaded specific facts to support each part of her theory, which is all *Twombly* requires. *See Corinthian Colleges*, 655 F.3d at 991 ("A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").[3]

First, Plaintiff alleged specific facts to support her allegation that reasonable consumers understand the term "flushable" to mean "suitable" for disposal by flushing down a toilet as opposed to merely "capable" of passing from the toilet to the pipes. (ER 80 ¶ 31.) Plaintiff alleged that "the Merriam-Webster dictionary gives the following as the sole definition of 'flushable: *suitable* for disposal by flushing down a toilet.'" (Id. ¶ 33.) Plaintiff further alleged that reasonable consumers understand that while certain items might flush, *e.g.* a child's toy, they are not "flushable." (Id. ¶ 32.) Plaintiff also alleged that Defendants themselves understood the word "flushable" to mean *suitable* for disposal. (ER 81 ¶ 35.) For example, Defendants used phrases like "sewer and septic safe," "break up after flushing," "compatible with on-site septic and municipal treatment" and "flushable due to patented technology that allows [wipes] to lose strength and break up when moving through the system after flushing." (ER 75-78, 81 ¶¶ 20-23; 35.)[4]

---

[3] These allegations also suffice for the misrepresentation element of her common law fraud claim. *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004) (holding that misrepresentation element of a fraud claim requires only a representation, concealment, or non-disclosure that is false)

[4] California Plumbing Code section 305.1 also supports Plaintiff's definition

Second, Plaintiff alleged specific facts to support her allegation that Defendants' wipes do not disperse or break apart under normal operating conditions. Plaintiff alleged that Defendants manufacture their wipes using a proprietary paper that is designed to withstand months of soaking in a wet environment, and as a result, the paper cannot disperse when flushed down a toilet. (ER 83 ¶ 40.) Plaintiff alleged that Defendants admit that their flushable wipes take hours to disperse. (ER 83-84 ¶¶ 42-43.) Further, Plaintiff alleged that she personally observed the failure of Defendants' wipes to disperse in the toilet. (ER 89 ¶ 53.) All of these facts relate to Defendants' wipes specifically, and not to flushable wipes generally. Further, Plaintiff alleged that proper and immediate dispersing is an essential part of a material's suitability for flushing. (ER 80-81 ¶ 34.)

Third, Plaintiff alleged that, due to Defendants' wipes' failure to disperse, they create a substantial risk of clogging pipes and damaging sewer and septic systems. Moreover, Plaintiff alleged that the wipes' failure to disperse creates a tendency for them to tangle with each other and other debris, forming long ropes

---

because it prohibits persons from flushing any item that is "capable of causing damage to the drainage system or public sewers." (ER 65.) Reasonable consumers would not consider wipes "flushable" if they do not meet this requirement. *See In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145 (2010) (holding that "a reasonable person would find it important when determining whether to purchase a product that it is unlawful to sell or possess that product").

that get caught in pipes and pumps, causing clogs. (ER 83-89 ¶¶ 42-47, 49-51.)

Further, Plaintiff alleged that three cities and numerous individual consumers have

specifically found Defendants' wipes unsuitable for flushing because they clogged

household plumbing and municipal treatment systems as a result of the wipes'

failure to disperse. (ER 86-91 ¶¶ 49-51, 58.) For example, Plaintiff alleged that

water officials in Bakersfield California tested various brands of "flushable" wipes,

including Defendants' Cottonelle Wipes, and determined that those wipes did not

break apart in the sewer, but instead ended up as clogs at the treatment plant. (ER

86-87 ¶ 49.) Likewise, a news report from the city of Jacksonville, Florida states

that city officials warned consumers not to buy Defendants' Cottonelle and Scott

Wipes because "there is little truth in the advertisements" that these products are

flushable; instead the "wipes do not break apart after being flushed and clog pipes

and pumps." (ER 87-88 ¶ 50.) Individual consumer experiences are similar, as

Plaintiff alleged one consumer complained "[a] few months after flushing the

wipes down my toilets and into my septic system it clogged the underground filter.

I had the 1000 gallon storage tank pumped and it was disgustingly obvious that the

Cottonelle wipes were the culprit. They do not break down like toilet paper or even

close." (ER 90-91 ¶ 58.)

Assuming the truth of these allegations, as is proper in assessing a motion to

dismiss, Plaintiff undoubtedly alleged a facially plausible claim that Defendants

acted unlawfully. *See Corinthian Colleges*, 655 F.3d at 991. Moreover, these allegations are more than detailed enough under Rule 9(b) as they plead with particularity why the designation "flushable" is false and misleading (i.e., the wipes do not disperse, create a risk of damaging pipes and sewers, and therefore are not suitable for flushing).

The district court erred by focusing on the fact that Plaintiff "personally experienced no problems with her plumbing on account of her use of the Scott Naturals® wipes or any of the products at issue" (ER 29) and thus, refusing to accept as true Plaintiff's allegations that the wipes do cause such problems. (ER 30 ("In short, plaintiff has failed to plead with particularity how Kimberly-Clark's wipes are not flushable. She alleges that she flushed the wipes—thus, the designation 'flushable' is literally true—but she does not allege that they caused problems with her plumbing system, or even issues with her sewer system.").) But whether Plaintiff was *able* to flush the wipes or personally suffered problems with her plumbing has no bearing on whether the wipes are "flushable," given Plaintiff's detailed and non-conclusory allegations that the wipes are not *suitable* to flush, which the district court was required, but refused, to accept as true. *Corinthian Colleges*, 655 F.3d at 991. Plaintiff alleged that Defendants' wipes do not disperse under normal operating conditions, and therefore substantially increase the risk of clogging individual pipes, or damaging sewer pipes and septic

systems down the line. That Plaintiff was personally lucky and did not experience a clogged pipe does not take away from the fact that Plaintiff alleged a plausible theory regarding how the "flushable" designation is likely to mislead reasonable consumers.[5] It was particularly inappropriate for the district court to place any weight on the notion that the flushability representation was "literally true" (ER 30) because (1) Plaintiff had presented detailed allegations that reasonable people and Defendants themselves did not define "flushable" in the way the court believed; (2) literal truth of an advertisement is insufficient, *e.g., Wahl,* 39 Cal.App.2d Supp. at 773-74; and (3) Defendants had omitted any definition or disclaimer that defined "flushable" as merely "capable" of flushing. *See, e.g., Daugherty v. American Honda Motor Car Co., Inc.*, 144 Cal. App. 4th 824, 834

---

[5] In its order denying reconsideration, the district court made clear that the court was erroneously conflating the issue of whether Plaintiff sufficiently alleged falsity, with whether Plaintiff could allege personal harm to her plumbing system. (ER 9.) In justifying its dismissal with prejudice, the district court stated that it had provided Plaintiff with prior notice in its First Order of Dismissal that the complaint did not sufficiently allege falsity because, as part of its discussion in dismissing on reliance grounds, "the court explained that plaintiff did not allege that she was unable to flush the product down the toilet, or that the product caused any problems with her pipes." (Id.) Or, "[i]n other words, plaintiff had offered no clear basis or any particularized facts to support her assertion that the Scott Naturals® wipes were not flushable." (Id.) This erroneous reasoning underpins the district court's entire dismissal.

(2006) (plaintiff can state cause of action for fraudulent omission when omission is contrary to representation made by defendant).

Next, the district court erred by refusing to accept as true Plaintiff's allegations that Defendants' wipes cause problems in sewers, on the ground that other materials can cause problems in sewers. According to the district court, "the FAC also cites news articles stating that problems at municipal wastewater treatment plants are caused by consumers who dispose of non-flushable wipes (and other objects not intended to be flushed, such as diapers, rags, towels, hair, cigarette butts, kitty litter, and doggy waste bags into sewer systems." (ER 29.) But the fact that other non-flushable items may cause blockages and backups at sewer treatment plants does not detract from Plaintiff's allegations that Defendants' wipes will do so. First, the two facts are not mutually exclusive. The news articles Plaintiff cited in the FAC state, for example, "flushable wipes backing up city pipes; no brand actually breaks apart in sewer;" "clogged pipes due to flushable wipes . . . take hours to unclog;" and that "'flushable wipes' . . . are clogging up the sewers like nothing sewer workers have seen before . . . [because] the wipes fail to disintegrate in the sewer system." (ER 86-89 ¶¶ 49-51; Ex. A to Safier Decl. in Support of Plaintiff-Appellant's Mot. to Supp. Record.) The news articles also specifically reference Defendants' wipes as causing the sewer blockages and include photographs showing clogs. (Id.) Second, Plaintiff alleges that the

problems caused by other foreign materials in the sewer are *exacerbated* by Defendants' wipes, because, instead of dispersing, the wipes wrap around and tangle with these materials. (ER 75, 85 ¶¶ 18, 46.) It is certainly misleading to market a product as "flushable" if the product can only be flushed in a hypothetical world where the sewers are perfectly clean and free of other materials with which the product might interact. If Defendants' wipes are not suitable for disposal in actual toilets that connect to actual sewers or septic systems, then Defendants' wipes are not "flushable" in any sense that matters to reasonable consumers.

The district court also erred when it rejected Plaintiff's allegations that numerous consumers have complained about Defendants' products causing clogs. According to the district court, the complaints do not support Plaintiff's allegation that Defendants' wipes are not flushable because they "do not specify when the consumer used the product and how many times, how the consumer used the product, and the other 'who, what, when, where, and how' of the misconduct that must be alleged in the complaint." (ER 30.) But evidence of other consumer complaints need not contain such details to support Plaintiff's allegation that the wipes are not flushable. The "who, what, when, where, and how" rule is the Rule 9(b) standard that applies to *Plaintiff's* allegations of fraud against Defendants. *See Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009). Plaintiff does not allege that the consumer complaints themselves constitute separate, individual

instances of fraud. Instead, Plaintiff included the complaints to support her allegation that Defendants' wipes are not flushable. The consumer complaints are more than adequately detailed to support this point because they specifically state that Defendants' wipes clogged their septic systems because they did not disperse after flushing. (*E.g.*, ER 90-91 ¶ 58.)[6] Courts have found similar allegations relating to customer complaints sufficient.[7]

Finally, the district court rejected Plaintiff's allegations that Defendants' wipes are not truly flushable because, the court reasoned, "plaintiff's discussion of the tests Kimberly-Clark conducted on its products underscores the fact that it would be impossible for any factfinder to determine whether the wipes are

---

[6] One such complaint states: "A few months after flushing the wipes down my toilets and into my septic system it clogged the underground filter. I had the 1000 gallon storage tank pumped and *it was disgustingly obvious that the Cottonelle wipes were the culprit. They do not break down like toilet paper or even close.*") (emphasis added). Another complaint states: "[J]ust had to pay over 300.00 today, from using *cottonelle flushable cleansing cloths*!!! had to have a plumber first and then a septic tank cleaned, just 2 of us living here and have previously only had to have tank cleaned yearly, *we were told and shown the cloths that had caused the blockage*!!") (emphases added).

[7] *See, e.g.*, *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1339 (C.D. Cal. 2013) ("Although defendants argue that plaintiffs' defect allegations are conclusory, the court finds that the consumer complaints included in plaintiffs' complaint give defendants sufficient notice of the nature of the defect. . . One complaint states, for example . . . 'Since I bought my Audi, I have had to put oil in it many times. I have also had an issue with the car seeming to lose power. This is very startling when it happens.'" (internal alterations omitted)).

'flushable' under Plaintiff's definition because of the differences and variations among types of wipes, operation of wastewater or septic treatment systems in different locations, and pipes and drainage systems." (ER 30-31.) The district court's conclusion was entirely outside of Plaintiff's allegations, and therefore improper on a motion to dismiss. Plaintiff nowhere alleges any facts on which the district court could conclude that any differences in the type of wipes, in the wastewater or septic systems, or in the pipes and drainage systems would result in Defendants' wipes being suitable for disposal down a toilet in some circumstances but not others. Plaintiff's allegations relating to Defendants' self-serving tests merely establish that those tests do not simulate real-world conditions and that they do not make the wipes "flushable" in a sense that matters to consumers. Further, the wipes included no disclaimer such as "depending on your sewer system," or "check with your wastewater treatment facility," so Defendants' label of "flushable" would still be false and misleading if the wipes are only suitable for flushing "in some circumstances." *See also* note 2, *supra.*

Because of the district court's numerous errors, this Court should reverse, and hold that Plaintiff sufficiently pleaded that Defendants' wipes are not "flushable."

**B.     The District Court Erred When It Held that Plaintiff Had
Suffered No Damages.**

The district court erred when it held that Plaintiff failed to allege damages

under the UCL, CLRA, and FAL because she failed to allege "she experienced any

harm resulting from product use," *i.e.,* that the wipes "caused problems with her

plumbing system, or even issues with her sewer system." (ER 30-31.) It is black-

letter law that a plaintiff in a false advertising case need not plead "harm resulting

from product use." The UCL and FAL require only that the plaintiff plead she lost

"money or property" as a result of the defendant's deceptive conduct, Cal. Bus &

Prof. Code § 17203, and the CLRA requires only that the plaintiff plead she

suffered "*any* damage." Cal. Civ. Code § 1780(a) (emphasis added). A plaintiff

suffers harm sufficient to state a claim under California's consumer protection laws

where, as here, she alleges she purchased a product she otherwise would not have

purchased or that she paid a premium as a result of the defendant's deceptive

practices. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013)

("[W]hen the consumer alleges that he would not have made the purchase but for

the misrepresentation . . . he has suffered an economic injury."); *see also id.* at

1108 ("[A]ny plaintiff who has standing under the UCL's and FAL's 'lost money or

property' requirement will, *a fortiori*, have suffered 'any damage' for purposes of

establishing CLRA standing."); *see also, e.g.*, *Chavez v. Blue Sky Natural

Beverage Co.*, 340 F. App'x 359, 361 (9th Cir. 2009) (holding that plaintiff had

sufficiently alleged harm required by UCL, FAL, and CLRA because plaintiff alleged "that he purchased beverages that he otherwise would not have purchased in absence of the alleged misrepresentations. As a result, Chavez personally lost the purchase price, or part thereof, that he paid for those beverages."); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 317 (2011) ("[P]laintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise, have "lost money or property" . . . and have standing to sue.").

Thus, Plaintiff need not have personally suffered a clogged pipe or any other harm to have a cognizable claim under the UCL, CLRA, or FAL, because Plaintiff claims she was duped into buying Defendants' wipes and paying a premium for those wipes as a result of Defendants' false advertising. This is the only harm she is required to plead, and the district court erred in requiring more.

Plaintiff presented this argument to the district court in her motion for reconsideration, but the district court distinguished the lost money or property requirement on the ground it deals only with "statutory standing," not damages. According to the district court, "the court was not referring to standing to sue when it found that plaintiff had not suffered damages, but rather was responding to Kimberly-Clark's argument that the FAC failed to state a claim under any of the four causes of action because (among other things) it did not plead facts showing

that plaintiff suffered any damages." (ER 13.) However, the only damages

requirements necessary to state a claim under the UCL, CLRA, and FAL are those

contained in the "statutory standing" provisions; a plaintiff need not plead

additional damages. *See* Cal. Bus. & Prof Code §§ 17203-204; 17535; Cal. Civ.

Code § 1780; *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119,

1135 (9th Cir. 2014) (holding that the only remedies available under the UCL are

restitution and an injunction, and that "restitutionary relief is limited to *money or*

*property lost by the plaintiff and acquired by the defendant*.") (emphasis added)

(citing *Kwikset Corp.*, 51 Cal. 4th 310, 335-36); *Klein v. Chevron U.S.A., Inc.*, 202

Cal.App.4th 1342, 1375 (2012) (noting that where a plaintiff alleged an "economic

injury" under the UCL he also adequately alleged injury under the CLRA). Here,

the "damages" Plaintiff will be able to recover will be either a refund of the

purchase price (in the case of rescission) or a refund of the price premium

attributable to Defendants "flushable" misrepresentation, which will be established

through expert testimony. *See Pulaski and Middleman LLC v. Google, Inc.*, 2015

WL 5515617 *8, ___ F.3d ___ (9th Cir. Sept. 21, 2015) ("[I]n calculating

restitution under the UCL and FAL, the focus is on the difference between what

was paid and what a reasonable consumer would have paid at the time of purchase

without the fraudulent or omitted information."); *Spann v. J.C. Penney Corp.*, 307

F.R.D. 508, 529-31 (C.D. Cal. 2015) (rejecting defendant's argument that

diminution in value was only way to calculate restitution under UCL and approving full refund measure of damages where class members could rescind transactions with defendant). Accordingly, the district court erred, and this Court should reverse.

### C. The District Court Erred By Requiring Plaintiff to Plead "How She Came to Believe" the Wipes Were Not Flushable.

In its First Order, the district court dismissed under Rule 9(b) because "plaintiff ha[d] not alleged facts showing how she came to believe that the Scott Naturals® wipes were not 'flushable.'" (ER 47.) The district court erred because nothing requires a plaintiff to plead "how she came to believe" that representations were false.[8] Rule 9(b) requires a plaintiff to plead fraud with particularity, but this means only "'the who, what, when, where, and how' of the misconduct charged" *Kearns*, 567 F.3d at 1124. The "how" component requires a plaintiff to plead *how a statement is false, deceptive, or misleading* such that she failed to receive what was promised, not how the plaintiff "came to believe" a statement was false. *See In re GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) ("To allege fraud

---

[8] The district court explained in its Order Denying Reconsideration that it considered the "how she came to believe" requirement as part of the reliance element of her causes of action. (ER 8-9.) But reliance deals with whether the Defendants' misrepresentations were a material part of her decision to purchase the wipes. *Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014). Reliance does not involve how a purchaser "came to believe" that misrepresentations were false.

with particularity ... plaintiff must set forth what is false or misleading about a statement, and why it is false."); *Tripodi v. Harveys Tahoe Mgmt. Co.*, 240 F. App'x 219, 219-20 (9th Cir. 2007) ("We affirm the dismissal of Tripodi's second amended complaint because Tripodi failed to allege with sufficient particularity how certain statements posted on defendant's website were false at the time they were made."). Thus, a plaintiff need only allege that she was promised and paid for something that she did not actually receive. *See, e.g.*, *Clancy v. The Bromley Tea Co.*, 2013 WL 4081632, *10-11 (N.D. Cal. Aug. 9, 2013) (collecting cases holding that to satisfy the "how" requirement plaintiff need only allege that he "reasonably relied on statements to purchase products he would not have purchased absent these allegedly deceptive statements").

Plaintiff alleged in detail how she understood the term "flushable," why that understanding was reasonable, and that she would not have purchased and paid more for the product absent the misrepresentation. (ER 89 ¶ 52.) And, as discussed in section VII.A., *supra*, the FAC also contains detailed allegations to establish that the product is not flushable in the reasonable meaning of that term. (ER 83-91 ¶¶ 40, 42-47, 49-51, 53, 58.) Accordingly, Plaintiff has sufficiently pleaded how the representation "flushable" was false and misleading, and the district court erred by imposing on Plaintiff a requirement that does not exist in law.

Moreover, even if there were a requirement for Plaintiff to plead "how she came to believe" that the flushable representation was false—as opposed to simply alleging how it is false—Plaintiff satisfied the requirement. Plaintiff pleaded that, after she began using the wipes, she noticed that each wipe "felt very sturdy and thick, unlike toilet paper." (ER 89 ¶ 53.) She also pleaded she "noticed that the wipes did not break up in the toilet bowl like toilet paper but rather remained in one piece," and thus "began to become concerned that [the wipes] were not truly flushable." (Id.) She stopped flushing the wipes at that point, and, a few months later, began investigating the matter further and "learned of the widespread damage caused to consumers' home plumbing and to municipal sewer systems as a result of consumers flushing the Flushable wipes." (ER 89-90 ¶ 54.) This research confirmed her belief that the "flushable" representation was false. (Id.) These allegations are more than sufficient to satisfy any requirement that the Plaintiff plead "how she came to believe" the representations were false.

The district court held Plaintiff could not sufficiently plead how she "came to believe" the "flushable" representation was false, because she did "not allege that she was unable to flush the product down the toilet, or that the product caused any problems with her pipes, just that after several uses of the wipes she 'began to seriously doubt that they were truly flushable.'" (ER 47.) But the district court's reasoning is another example conflating the necessary harm or injury required in

this case with damage to pipes or plumbing, and it is erroneous. Plaintiff did not have to personally experience problems with her pipes or a clogged toilet to learn (or "come to believe") that the "flushable" representation was false. She only had to learn that the wipes were not suitable for disposal down a toilet, which she learned by observing that the wipes failed to disperse in her own toilet bowl, and upon subsequent research of the damage they caused municipal sewage systems.

### D. The District Court Erred When It Granted Defendants' Motion to Strike.

In its First Order, the district court granted Defendants' motion to strike from the complaint "allegations citing on-line articles/reports and websites discussing harm caused by 'flushable' wipes to municipal treatment plants." (ER 52.) The court reasoned that those allegations were "irrelevant and immaterial, particularly because plaintiff [did] not allege that she read or even was aware of such articles and websites," and because she did "not allege that she 'began to seriously doubt' that the [wipes] she purchased [were] not 'truly flushable' because she read the articles . . ." (ER 52-53.) It also held that these allegations "do not demonstrate that defendants' claim that the products at issue were 'flushable' was false, as they address 'flushable wipes' in general" but do not mention "any of Kimberly-Clark's products." (ER 53.) Plaintiff re-pleaded allegations as to a subset of the news articles, which, contrary to the district court's holding, had specifically mentioned problems with Defendants' products, and Defendants moved to strike

again. After dismissing the case with prejudice, the district court denied the renewed motion to strike as moot. Because the issue is likely to arise again upon remand, this Court should hold that the district court erred when it struck the allegations from the original complaint, as they are relevant and material to whether Defendants' "flushable" representation is false, and therefore prevent the district court from striking similar allegations from the FAC.

As this Court explained in *Whittlestone*, "courts may not resolve disputed and substantial factual or legal issues in deciding a motion to strike." 618 F.3d at 973 (internal quotations and alterations omitted). Rather, Rule 12(f) allows a court to strike material from a complaint only if it is "redundant, immaterial, impertinent, or scandalous." *Id.* at 973. An allegation is "immaterial" only if it "has no essential or important relationship to the claim for relief or the defenses being pled." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

Plaintiff's allegations describing the harm that flushable wipes have caused are not "immaterial." An essential element of Plaintiff's claims is that Defendants' "flushable" representation was deceptive and misleading, because the wipes are not suitable for flushing. The allegations and news articles create a basis for a reasonable inference that Defendants' wipes are not suitable for flushing, because

they fail to disperse, creating clogs and otherwise harming municipal sewer systems.[9]

### E.     The District Court Erred By Denying Leave to Amend.

The district court erred by dismissing the FAC without leave to amend because the district court's dismissal was based upon a deficiency not identified in the district court's First Order. When a court identifies new deficiencies in a first amended complaint, it must grant leave to amend unless amendment would be futile. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003) (per curiam) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment."); *Gilley v. Atl. Richfield Co.*, 2005 WL 3671220, at *1 (9th Cir. June 27, 2005) ("The dismissal with prejudice was an abuse of discretion because the district court specifically instructed Gilley how to plead the amended complaint and then, after Gilley made an attempt to comply with these instructions, dismissed the amended complaint without giving Gilley an opportunity to correct

---

[9] At the pleading stage a plaintiff is allowed to aver facts generally and draw inferences about specific circumstances. *See Lujan*, 497 U.S. at 889 (on motion to dismiss, courts "presume[] that general allegations embrace those specific facts that are necessary to support the claim"). Many of the news articles describe wastewater officials urging consumers not to flush *any* flushable wipes products (or anything other than toilet paper or human waste), due to the problems they cause the sewage systems. (ER 133-137 ¶¶ 56-69.)

the newly identified deficiencies."). Here, amendment would not have been futile and it was an abuse of discretion to deny it.

In the First Order, the court dismissed the initial complaint under Rule 9(b) on the ground that the "plaintiff has not alleged facts showing how she came to believe that the Scott Naturals® wipes were not 'flushable,'" and granted leave for Plaintiff to amend. (ER 47.) Plaintiff addressed that purported deficiency in the FAC by explaining that she observed that the paper in the bowl did not disperse upon flushing, investigated others' reports of damage caused by the wipes, and concluded that the wipes were not suitable for flushing. (ER 89-90 ¶¶ 53-54.)

In the Second Order, the district court identified a different issue, namely that the Plaintiff had failed to allege with particularly "why the designation 'flushable' is false as applied to the Kimberly-Clark products at issue." (ER 31 (emphasis added).) But the district court dismissed with prejudice and never gave Plaintiff an opportunity to correct this newly identified deficiency.

As discussed in section VII.A., Plaintiff has already pleaded that the wipes are not "flushable" because they are not dispersible; that they have clogged and caused damage to household pipes and municipal sewers when flushed; and that they are therefore not suitable for flushing. However, if leave were granted, Plaintiff would further plead that that the wipes are not "flushable" because the act of flushing them would violate section 305.1 of the California Plumbing Code. (ER

65). That code section further supports Plaintiffs' argument that "flushable" does not mean simply that an item can pass through a toilet, but rather, it must be able pass through the entire sewer system without being "capable of causing damage" to the system; flushing any other item is illegal. *Id.*

In light of the California Plumbing Code, this case presents similarities to *In re Steroid Hormone Prod. Cases*. 181 Cal. App. 4th 145. There, the plaintiff sued General Nutrition Companies (GNC) under the UCL after purchasing nutritional supplements over-the-counter that contained a controlled substance that could be sold or possessed only with a prescription. *Id.* at 149. He sought restitution on the ground that he had paid for an "illegal product he would not have bought had he known it was illegal." *Id.* at 156. *Id.* The court agreed with his theory of restitution, holding that "the question that must be answered in this case is whether a reasonable person would find it important when determining whether to purchase a product that it is unlawful to sell or possess that product. It requires no stretch to conclude that the proper answer is 'yes'—we assume that a reasonable person would not knowingly commit a criminal act." *Id.* at 157. Here, similarly, Plaintiff will allege that the Defendants' wipes are illegal to flush in California because they are "capable of causing damage to the drainage system or public sewer" and therefore it is materially false and deceptive to market them as "flushable," because

had the truth been disclosed, no reasonable person would flush them. The district court erred by denying leave to amend.

**F.     Plaintiff Has Article III Standing to Pursue Injunctive Relief.**

The district court held that Plaintiff could not establish Article III standing to pursue injunctive relief because "as she has now decided that the Scott Naturals® wipes are not 'flushable,' she will be unable to allege with regard to any future purchase of the same product, that she purchased it in reliance on the 'flushable' label." (ER 41.) The court also held that, although Plaintiff sought injunctive relief regarding all of Defendants' "flushable" wipes, including potential modified versions, she lacked standing because "she has indicated she has no intention of purchasing the *same* Kimberly-Clark product in the future." (ER 21 (emphasis added).) The district court's view of what constitutes a cognizable injury for purposes of establishing Article III standing is improperly narrow. The Supreme Court has held that, to have standing to pursue injunctive relief, a plaintiff must allege only "a sufficient likelihood that [she] will again be wronged in a *similar way*," not that she will be wronged in the exact same way that entitled her to sue for damages. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (emphasis added). Further, as this Court has admonished, when determining whether an injury is similar, courts "must be careful not to employ too narrow or technical an approach . . . [and] must reject the temptation to parse too finely." *Armstrong v.*

*Davis*, 275 F.3d 849, 867 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005). Here, the district court applied too narrow and technical an approach by requiring Plaintiff to allege she would again purchase the exact same version of Defendants' wipes in the future, be misled in the same way, and suffer the same injury that led her to sue for damages; this was reversible error.

Under the district court's reasoning, virtually no plaintiff in a consumer fraud case could ever seek injunctive relief because, having alleged that the defendant's representations are false and misleading, she could not reasonably allege that she would be defrauded into purchasing the same product again in the future. But the future injury Plaintiff seeks to redress through injunctive relief is not identical to the injury that prompted her to sue for damages, *i.e.,* that she will lose money by purchasing the same product in reliance on the same representation, but is *similar* to that injury. The injury she seeks to redress is two-fold: (1) an injury to her ability to rely in the future on "flushability" representations regarding modified versions of Defendants' wipes in purchasing those wipes or comparing them to competitor wipes and (2) an injury to her statutorily-conferred right to receive truthful information from Defendants in advertising and labeling. Either injury alone is cognizable under Article III and confers standing to pursue injunctive relief.

### 1. Plaintiff Has Alleged Injury to Her Ability to Rely on Defendants' Labels In the Future.

Plaintiff has alleged a cognizable injury for Article III purposes because she has sufficiently alleged that, when she encounters the denomination "flushable" on defendants' wipes products in the future, she will be unable to rely on those labels when making purchasing decisions. Although not the exact same injury that provides her standing to sue for damages, many courts have recognized it is sufficiently similar to be cognizable under Article III. *E.g.*, *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) ("Plaintiffs request to be relieved from false advertising by defendants in the future, and the fact that they discovered the supposed deception some years ago does not render the advertising any more truthful. Should plaintiffs encounter the denomination 'All Natural' on an AriZona beverage at the grocery store today, they could not rely on that representation with any confidence. This is the harm California's consumer protection statutes are designed to redress."); *Weidenhamer v. Expedia, Inc.*, No. C14-1239RAJ, 2015 WL 1292978, at *5 (W.D. Wash. Mar. 23, 2015) ("Imagine that Mr. Weidenhamer purchases air travel from Expedia in the future, and confronts the same deceptive pop-up ad. He is entitled to rely on the statements made in that ad, even if he previously learned that some of those statements were false or deceptive. The notion that only a clueless consumer can establish Article III standing to redress false advertising is unsupportable.").

Although the Supreme Court has held that past harm "does not *in itself* show a present case or controversy regarding injunctive relief," it also recognized that past harm coupled with "continuing, present, adverse effects" can confer standing. *O'Shea v. Littleton*, 414 U.S. 488 495-96 (1974) (emphasis added); *see also Lyons*, 461 U.S. at 103 ("[P]ast wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury."). Here, Plaintiff's past harm is coupled with the continuing, present, adverse effect of her being unable to rely on Defendants' labels when shopping for similar products.

The facts plaintiff alleges here are similar to those in *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d. 181, 194-195 (D.D.C. 2013), where the court found plaintiff did have standing to seek injunctive relief. There, plaintiffs alleged that the defendant falsely labeled its products as "salon-only," when they were, in fact, sold in other venues. *Id.* Defendant argued that "the named plaintiffs [were] not at risk of being fooled by the 'salon-only' labels into purchasing L'Oréal's products, and that this preclude[d] a finding of standing for injunctive relief." *Id.* at 194. The Court rejected this argument, and found that the plaintiffs did have standing, reasoning as follows:

> To the extent the named plaintiffs purchased the products strictly because of the "salon-only" misrepresentations, the risk of future harm may not be identical to that suffered in the past. It is unlikely that the named plaintiffs will purchase the products again because they believe that they are only sold in salons. But they will be harmed—without an injunction—by not being able to rely on the

"salon-only" label with any confidence. Put another way, the named plaintiffs will have no way of knowing whether L'Oréal's ongoing "diversion awareness" campaign is having any effect in deterring mass-market sales and boosting the label's veracity. . . . Hence, the Court finds that even the named plaintiffs, knowledgeable about the misrepresentations, are likely to suffer future harm in the absence of an injunction.

*Id.* at 194-95.

Plaintiff alleges that she continues to visit "stores such as Safeway, where Defendants' 'flushable' wipes are sold," "desire[s] to purchase wipes that are suitable for disposal in a household toilet," but "when presented with Defendants' packaging on any given day, continues to have no way of determining whether the representation 'flushable' is in fact true." (ER 90 ¶ 57.) Similar to *L'Oreal*, Plaintiff here will be unable to rely on Defendants' representations that their wipes are flushable when she is shopping for wipes in the future, unless the Court grants her the injunctive relief she requests. This is sufficient injury to provide standing to seek injunctive relief. *See id*; *Ries*, 287 F.R.D. at 533; *Weidenhamer*, 2015 WL 1292978, at *5; *Dean v. Colgate-Palmolive Co.*, No. EDCV 15-0107 JGB, 2015 WL 3999313, at *8 (C.D. Cal. June 17, 2015).[10]

_____

[10] *Dean* recognizes that "[d]istrict courts in this circuit have split on how to handle th[e] issue," of standing to seek injunctive relief in false labeling class actions, *id.*, which makes it particularly important that this Court reverse the district court here and provide clear guidance.

The district court's position creates a "Catch-22" for plaintiffs in false labeling class actions, and "would make federal courts powerless to enjoin false advertising, at least when a duped consumer points it out." *Weidenhamer*, 2015 WL 1292978, at *5. It also takes too narrow and technical an approach to assessing the similarity of injuries, in contravention of this Court's instructions in *Armstrong*, 275 F.3d at 867. Inability to rely on a defendant's future labels is a sufficiently concrete and particularized injury, and it is very similar to the type of past harm suffered—being duped into buying a product by relying on the defendant's representations in the first place. And, as the *Reis* court noted, inability to rely on a seller's advertisements is precisely "the harm California's consumer protection statutes are designed to redress." 287 F.R.D. at 533.

Moreover, the district court's position about injunctive relief creates an *Erie* problem. The *Erie* doctrine recognizes that in diversity cases, "it would be unfair for the character or result of litigation materially to differ because the suit had been brought in a federal court" instead of state court. *Hanna v. Plumer*, 380 U.S. 460, 467 (1965). The doctrine is rooted in concerns of federalism and comity, and is "most seriously implicated," when federal law "displace[s] the state law that would ordinarily govern." *Boyle v. United Tech. Corp.* 487 U.S. 500, 517 (1988). The "twin aims" of *Erie* are "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna*, 380 U.S. at 468. Here, the district

45

court's position violates both of the "twin aims" because it creates materially different results when the same case is brought in state versus federal court, and therefore encourages defendants to "shop" for a federal forum.

In California state court, where Plaintiff filed suit (ER 104), Plaintiff would have been able to seek injunctive relief on behalf of the class because she lost money or property as a result of the Defendants' deceptive labeling, and California law requires no allegation of threatened future harm. *See* Cal. Bus. & Prof. Code § 17204 (conferring standing to seek injunctive relief on "any person who has *suffered* injury in fact and has lost money or property as a result of such unfair competition") (emphasis added). Indeed, one of the principle purposes of California's consumer protection statutes is to allow a plaintiff to prevent a defendant from defrauding other consumers in the future. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 319 (2009) ("[T]he UCL's . . . larger purpose [is to] protect[] the general public against unscrupulous business practices . . . [and] the primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction."). It is only because Defendants removed this case to federal court that Article III now applies and could foreclose Plaintiff from seeking injunctive relief, thus providing materially different results for the same case proceeding in a federal as opposed to state forum.

This "inequitable administration of the law" will encourage future defendants in false advertising cases to remove to federal court solely for the purpose of avoiding the threat of injunctive relief. The incentive is even more pronounced if, as the district court held, federal courts cannot remand a request for injunctive relief back to state court. (*See* ER 6-7 (holding that there was no authority "to remand a remedy without any accompanying cause of action seeking that remedy").) If the district court's interpretation is correct, defendants can eliminate injunctive relief entirely in false advertising class actions by removing to federal court, which, under CAFA, is virtually guaranteed. In effect, federal law would operate to completely void a substantive provision of California law. Such an outcome offends both *Erie* and principles of federalism and comity.

It is true that neither the *Erie* doctrine nor federalism and comity can trump Article III's requirement of injury-in-fact. *See Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001–02 (9th Cir. 2001) (holding that "a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury"). Nevertheless, these principles should guide the Court in interpreting Article III's requirements, and where, as here, Article III can be interpreted in a way that offends neither *Erie* nor comity, that is the preferred outcome. *See In re Cty. of Orange*, 784 F.3d 520, 531 (9th Cir. 2015) (holding that

"Erie's federalism principle directs . . . federal courts [to] adjudicate state-created

rights in a manner that closely resembles the way in which a state court would

adjudicate that same right."). Accordingly, the Court should hold that Plaintiff's

inability to rely on Defendants' representations in the future constitutes a

cognizable Article III injury, which Plaintiff sufficiently alleged.[11]

---

[11] Alternatively, this Court should hold that the district court erred by denying
Plaintiff's request to remand the injunctive relief claim to state court. One district
court in this Circuit granted such a remand in identical circumstances in another
flushable wipes case:

> Injunctive relief is an important remedy under California's consumer
> protection laws. *See, e.g.,* In re Tobacco II, 46 Cal.4th at 319, 93
> Cal.Rptr.3d 559, 207 P.3d 20 ("the primary form of relief available
> under the UCL to protect consumers from unfair business practices is
> an injunction"). Allowing a defendant to undermine California's
> consumer protection statutes and defeat injunctive relief simply by
> removing a case from state court is an unnecessary affront to federal
> and state comity. This case was originally filed in a California state
> court by a California plaintiff on behalf of a putative class of
> California residents under California's state laws. A California state
> court ought to decide whether injunctive relief is appropriate for
> plaintiff's claims. Respect for comity and federalism compel that
> conclusion, and just tossing aside the state's injunction remedy
> because of this Court's limited jurisdiction is an unwarranted federal
> intrusion into California's interests and laws.

*Machlan v. Procter & Gamble Co.*, 77 F.Supp.3d 954, 961(N.D. Cal. Jan. 7, 2015).
Ninth Circuit precedent allows for this possibility. *See Lee*, 260 F.3d at 1007 ("A
case that is properly removed in its entirety may nonetheless be effectively split up
when it is subsequently determined that some claims cannot be adjudicated in
federal court."); *California v. Northern Trust Corp.*, 2013 WL 1561460, at *5
(C.D. Cal. Apr. 10, 2013) (severing and remanding UCL claims where the
alternative approach of "dismiss[ing] the UCL claims would force Plaintiff to

### 2. Defendants' Invasion of Plaintiff's Statutory Right to Receive Truthful Advertising and Labeling Materials Provides Article III Standing.

#### (a) The Invasion of a Statutory Right Constitutes an Article III Injury In Fact.

Plaintiff additionally has standing to seek injunctive relief because of the threatened invasion of her statutory rights. To seek injunctive relief, Article III requires a plaintiff to establish that "[s]he is under threat of suffering 'injury in fact,'" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009), but the injury is not limited only to the kind of physical or economic harm that would result if Plaintiff were to purchase another deceptively labeled "flushable" wipes product. Rather, Article III recognizes as an injury the invasion (or threatened invasion) of *any* concrete and particularized *legally protected interest. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Accordingly, "the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982). In other words, Congress, or in this case a state legislature, can "elevat[e] to the status of [a] legally cognizable injur[y]" a type of harm that was

---

forfeit its otherwise viable state law claims"); *see also Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951-52 (S.D. Cal. 2007) ("If this Court lacks jurisdiction to enjoin Defendants or give declaratory relief, consumers in Plaintiff's position may yet be able to split their claim and seek injunctive relief in state court.").

"previously inadequate in law." *Lujan*, 504 U.S. at 578.[12] Thus, "the absence of pecuniary loss is no bar to Article III standing, if the plaintiff has alleged a violation of the rights conferred by statute." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1116 (9th Cir. 2014).

The Supreme Court's decision in *Havens* is instructive. There, an African American alleged that the defendant violated the Fair Housing Act by telling her that no apartments were available for rent when it had, on the same day, told a white individual that apartments were available. 455 U.S. at 367-68. The defendant challenged the plaintiff's standing to sue because the plaintiff had alleged that she was a "tester," that is, an individual "who, without intent to rent or purchase a home or apartment" posed as a purchaser for the purpose of collecting evidence of discriminatory housing practices. *Id.* at 373.

The defendant contended that, since the plaintiff did not actually intend to rent an apartment, she suffered no harm from the misrepresentation, and therefore had suffered no cognizable injury in fact. *Id.* The Supreme Court rejected this position. *Id.* The Court interpreted the Fair Housing Act as conferring a statutory

---

[12] Although many courts discuss Article III standing in the context of violations of federal statutory rights, violations of state statutory rights also create a cognizable injury for Article III purposes. *E.g.*, *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 797 (N.D. Cal. 2011) ("[T]he Court finds that they have alleged a violation of their individual statutory rights under California Civil Code § 3344, and therefore, an invasion of a legally protected interest for Article III purposes.").

right on all persons to receive "truthful information about available housing." *Id.* at 373. Since the defendant had lied to the plaintiff about the availability of housing, the plaintiff had "suffered an injury in precisely the form the statute was intended to guard against," and therefore had standing to sue. *Id.* The Supreme Court found it of no moment that the plaintiff "approached the real estate agent fully expecting that [she] would receive false information, and without any intention of buying or renting a home," because none of that negated "the simple fact of injury" to the plaintiff's statutorily created right to receive truthful housing information. *Id.* at 374.

Similar to the Fair Housing Act, California's consumer protection laws broadly prohibit companies from engaging in deceptive advertising and labeling practices, and, as discussed more fully below, create a statutory right in consumers to receive truthful information from sellers about their products. *See* Cal. Bus. & Prof. Code, § 17200; *id.* § 17500; Cal. Civ. Code. § 1770. Accordingly, the fact that Plaintiff does not allege she will purchase this product again in the future is irrelevant to the Article III standing inquiry. *See Tourgeman*, 755 F.3d at 115 ("[T]he absence of pecuniary loss is no bar to Article III standing, if the plaintiff has alleged a violation of the rights conferred by statute."). Plaintiff alleges a threatened invasion to her statutory right to receive truthful information from Defendant because she alleges that she continues to visit "stores such as Safeway,

where Defendants' 'flushable' wipes are sold," "desire[s] to purchase wipes that are suitable for disposal in a household toilet," but "when presented with Defendants' packaging on any given day, continues to have no way of determining whether the representation 'flushable' is in fact true." (ER 90 ¶ 57.) These allegations suffice to show that Plaintiff will continue to be exposed to Defendants' deceptive advertising and labeling in violation of her statutory rights.

Further, just as in *Havens*, where the plaintiff had standing even though she expected to receive false information from defendants, Plaintiff's awareness does not negate "the simple fact of injury." Her statutory right is to receive truthful information, or to put it another way, not to be subjected to Defendants' false advertising and labeling, regardless of whether Plaintiff knows or suspects it is false.

**(b)** **California's Consumer Protection Laws Create a Statutory Right to Receive Truthful Information From Sellers About Their Products.**

When a plaintiff premises Article III standing on the basis of the invasion of a statutorily-conferred right, a court must examine the statute to determine the scope of the right at issue and whether the defendant has invaded it. *See Tourgeman*, 755 F.3d at 114 ("In cases involving statutory rights, the particular statute and the rights it conveys guide the standing determination") (internal quotations and alterations omitted). "Essentially, the standing question in such

cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin,* 422 U.S. 490, 500 (1975). If the statute in question creates a private right of action to enforce a statutory prohibition, it creates a statutory right, the invasion of which provides Article III standing. *See Edwards v. First Am. Corp.,* 610 F.3d 514, 517–18 (9th Cir. 2010) ("Thus, we must look to the text of RESPA to determine whether it prohibited Defendants' conduct; if it did, then Plaintiff has demonstrated an injury sufficient to satisfy Article III."); *Fulfillment Servs. Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 619 (9th Cir. 2008) ("To be certain, not all statutes endow rights on a given plaintiff, the infringement of which is sufficient to support standing. Nevertheless, as we explain below, because Congress has enacted specific legislation, namely § 14704(a), establishing a private cause of action for violations of the MCA, including violations of § 13703, we must infer that it intended § 13703 to create such rights." (internal citation omitted)).

California's consumer protection laws create a statutory right to receive truthful information from sellers about their products, because they prohibit false advertising and create private rights of action to enforce the prohibition. The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code

§ 17200. California's FAL likewise specifically prohibits companies from "mak[ing] or disseminat[ing] . . . any statement . . . which is untrue or misleading" in connection with the sale of any goods or services. Cal. Bus. & Prof. Code § 17500. And the CLRA prohibits companies from, among other things, "representing that goods or services have . . . characteristics, ingredients, uses, benefits or quantities which they do not have . . ." Cal. Civ. Code § 1770(a)(5). Each of these statutes also provides a private cause of action to enforce its respective prohibition on false and misleading advertising and labeling. *See* Cal. Bus. & Prof Code §§ 17203-204, 17535; Cal. Civ. Code § 1780. By creating a private right of action to enforce each of the statutory prohibitions, California has created a statutory right for consumers to receive truthful information from sellers about their products, the invasion of which constitutes a cognizable injury for Article III purposes. *See Havens*, 455 U.S. at 373-74 (holding that Fair Housing Act's broad prohibition against "represent[ing] to *any person* because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available'" conferred statutory right on all persons to receive "truthful information about available housing"); *Edwards,* 610 F.3d at 517–18 (holding that RESPA's creation of a private right of action to enforce its prohibition against payment of kickbacks in exchange for real estate related business referrals created a statutory right to be free

from referrals based on kickbacks and that, where plaintiff home buyer was referred by her settlement agent to particular title insurer as a result of a kickback deal between agent and insurer, she suffered Article III injury of her statutory rights even though she paid no more for insurance than she otherwise would have); *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412-13 (9th Cir. 2014) (holding that FCRA's creation of a private right of action to enforce statutory prohibitions on various debt collection practices created a statutory right for plaintiff to be free from those debt collection practices and that defendant's invasion of that right by engaging in prohibited practices conferred Article III standing on plaintiff even in absence of any other harm), *cert. granted*, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (2015); *Tourgeman*, 755 F.3d at 1116 (holding that FDCPA created statutory right "not to be the target of misleading debt 'collection communications' and that violation of that right "constitute[d] a cognizable injury under Article III," regardless of whether plaintiff suffered any other harm).

> **(c)** **The Statutory Right to Receive Truthful Information Protects against Individualized Harm, and Plaintiff is Likely to be Among Those Injured in Absence of an Injunction.**

There are two limitations on the statutory rights doctrine. First, the plaintiff must be "among the injured," in the sense that she alleges the defendant violated, or is likely to violate, her statutory rights, as opposed to someone else's rights.

*Tourgeman*, 755 F.3d at 1115. Second, "the statutory right at issue must protect against 'individual, rather than collective harm.'" *Tourgeman*, 755 F.3d at 1115.[13]

Both limitations are satisfied here. First, Plaintiff has alleged that she is among those likely to receive untruthful information from Defendants in the future because she continues to shop for flushable wipes. (ER 90 ¶ 57.) Second, as in *Tourgeman,* "[t] he personal interest in not being 'the object of a misrepresentation made unlawful [by statute] assuredly is an 'individual, rather than a collective, harm." *Tourgeman*, 755 F.3d at 1115, citing *Havens,* 455 U.S. at 373.

## VIII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court reverse the district court's orders dismissing her claims and remand the case for further proceedings.

---

[13] The reason for both limitations is that, although statutes can elevate to the status of legally cognizable injuries types of harm that were not previously recognized in law, *Lujan,* 504 U.S. at 577-78, "'the requirement of injury in fact is a hard floor for Article III jurisdiction that cannot be removed by statute.'" *Summers*, 555 U.S. at 497.

Respectfully submitted this 20th day of November, 2015.

GUTRIDE SAFIER LLP

 /s/ Seth A. Safier
_____

Adam Gutride
Seth A. Safier
Kristen Simplicio
Attorneys for Plaintiff-Appellant

## STATEMENT OF RELATED CASES

There are no related cases pending in this Court.

## CERTIFICATION RE WORD COUNT

Pursuant to the Federal Rules of Appellate Procedure, Rule 32(a)(7)(c), I hereby certify that the foregoing brief of Plaintiffs-Appellants complies with the word count limitation of Rule 32(a)(7)(b). There are 13,946 words in the brief according to the word count function of Microsoft Word 2010, the word-processing program used to prepare the brief.

Respectfully submitted this 20th day of November, 2015.

GUTRIDE SAFIER LLP


 /s/ Seth A. Safier
Adam Gutride
Seth A. Safier
Attorneys for Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the Appellant's Opening Brief and Excerpts of Record with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system on November 20, 2015. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Seth A. Safier
Seth A. Safier