IN THE

# United States Court of Appeals
For The
# Ninth Circuit

**No. 15-16173**

———————

Jennifer Davidson,

*Plaintiff-Appellant,*

vs.

Kimberly-Clark Corporation, et al.,

*Defendants-Appellees.*

———————

**On Appeal from the
Northern District of California
Honorable Judge Phyllis J. Hamilton, Presiding
Case No. 14-CV-01783 (PJH)**

———————

**BRIEF OF DEFENDANTS-APPELLEES**

———————

CONSTANTINE L. TRELA, JR.
SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN
CHICAGO, IL 60603

TELEPHONE: +1 312 853 7000
FACSIMILE: +1 312 853 7036

MICHELLE GOODMAN
AMY LALLY
SIDLEY AUSTIN LLP
555 WEST FIFTH STREET
LOS ANGELES, CA 90013

TELEPHONE: +1 213 896 6000
FACSIMILE: +1 213 896 6600

NAOMI IGRA
SIDLEY AUSTIN LLP
555 CALIFORNIA STREET,
SUITE 2000
SAN FRANCISCO, CA 94104

TELEPHONE: +1 415 772 1200
FACSIMILE: +1 415 772 7400

*Attorneys for Defendants-Appellees*

# APPELLEES' CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the Appellees identified below respectfully submit this Corporate Disclosure Statement.

1.     Kimberly-Clark Corporation is a publicly held corporation. Kimberly-Clark Corporation does not have a parent corporation.

2.     No publicly held corporation owns ten percent or more of Kimberly-Clark's stock.

3.     Kimberly-Clark Worldwide, Inc. is a wholly owned subsidiary of Kimberly-Clark Corporation.

4.     Kimberly-Clark Global Sales, LLC is a wholly owned subsidiary of Kimberly-Clark Corporation.

Dated: February 19, 2016              Sidley Austin LLP

                                      By: /s/Constantine L. Trela, Jr.

                                          Constantine L. Trela, Jr.
                                          Michelle Goodman
                                          Amy Lally
                                          Naomi Igra
                                          Attorneys for Defendants-Appellees

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................1

II.   JURISDICTIONAL STATEMENT ..................................................2

III.  ISSUES PRESENTED .........................................................................3

IV.   STATEMENT OF THE CASE ..........................................................3

    A.   Proceedings Below ...................................................................3

    B.   Statement of Facts ....................................................................6

        1.   Davidson's Original Complaint ...................................7

            a.   Plaintiff's Experience ......................................7

            b.   Other Allegations.............................................7

            c.   Dismissal of the Original Complaint ...............8

        2.   Davidson's Amended Complaint ............................10

            a.   Amendments to the Complaint .......................10

            b.   Dismissal of the Amended Complaint............12

        3.   Davidson's Motion for Reconsideration...................14

V.    SUMMARY OF ARGUMENT.......................................................16

VI.   STANDARD OF REVIEW.............................................................18

VII.  ARGUMENT....................................................................................20

    A.   Davidson's Allegations do not State a Claim. ....................20

1.     Davidson's Allegations About Her Experience Neither Explain with Specific Facts Why the Product Is Not "Flushable" nor Do They Raise Her Claims Above the Level of Mere Speculation...................................21

2.     The Remaining Allegations do not Fill the Gaps in Davidson's Pleadings. ..................................22

    a.   News Reports...................................23

    b.   Customer Complaints ......................28

    c.   Product Testing...............................29

B.   Davidson's Failure to Plead a Misrepresentation also Defeated her Damages Claim. ......................31

C.   Davidson Mischaracterizes the District Court's Statement that She did not Allege How She "Came To Believe" the Product Was Misrepresented as Flushable.........................................34

D.   The District Court Properly Granted Defendants' Motion to Strike.....................................................36

E.   The District Court Properly Denied Further Leave to Amend. ..........38

F.   Davidson's Alleged Future Injury is Too Speculative to Confer Standing for Injunctive Relief..............................41

1.     Davidson's Alleged Inability to Rely on Kimberly-Clark's Advertising in the Future Does Not Constitute a Realistic Threat of Future Injury..........42

2.     Davidson Does Not Have Standing to Seek Injunctive Relief Based on an Alleged Statutory Right to Truthful Advertising. ...............................49

VIII.  CONCLUSION................................................55

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aloudi v. Intramedic Research Grp.*,
   2015 U.S. Dist. LEXIS 89366 (N.D. Cal. July 9, 2015) ...................................27

*Asghari v. Volkswagen Grp. of Am., Inc.*,
   42 F. Supp. 3d 1306 (C.D. Cal. 2013) ...............................................................29

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................19

*Bell v. City of Kellogg*,
   922 F.2d 1418 (9th Cir. 1990) ...........................................................................52

*Bell v. Hood*,
   327 U.S. 678 (1946) ..........................................................................................33

*Brown v. Elec. Arts, Inc.*,
   724 F.3d 1235 (9th Cir. 2013) .............................................................. 24, 37-38

*Cafasso v. Gen. Dynamics C4 Sys. Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ............................................... 20-21, 26

*Cantrell v. City of Long Beach*,
   241 F.3d 674 (9th Cir. 2001) .............................................................................54

*In re Century Aluminum Co. Sec. Litig.*,
   729 F.3d 1119 (9th Cir. 2013) ...........................................................................32

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983)......................................................................................48, 54

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013)......................................................................................46

*In re Cnty. of Orange*,
   784 F.3d 520 (9th Cir. 2015) .............................................................................47

*Crowley v. Nevada*,
   678 F.3d 730 (9th Cir. 2012) .............................................................................19

iv

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ...............................................................24

*Dart v. Cherokee Basin Operating Co. v. Owens*,
135 S. Ct. 547 (2014)...........................................................................47

*Edwards v. First Am. Corp.*,
610 F.3d 514 (9th Cir. 2010) ...............................................................52

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .............................................................40

*Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*,
548 F.3d 1184 (9th Cir. 2008) .............................................................33

*Erie R.R. Co. v. Tompkins*,
304 U.S. 64 (1938)....................................................................... 46-47

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*,
753 F.3d 862 (9th Cir. 2014) ...............................................................45

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993) .............................................................37

*Fraley v. Facebook*,
830 F. Supp. 2d 785 (N.D. Cal. 2011)...................................51, 52, 53

*Fulfillment Servs. Inc. v. UPS*,
528 F.3d 614 (9th Cir. 2008) .......................................................50, 52

*In re GlenFed, Inc. Sec. Litig.*,
42 F.3d 1541 (9th Cir. 1994) .......................................................19, 26

*Gold v. Lumber Liquidators*,
2015 U.S. Dist. LEXIS 165264 (N.D. Cal. Nov. 30, 2015) ........................ 32-33

*Gonzalez v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014) .............................................................24

*Hangarter v. Provident Life and Acc. Inc. Co.*,
373 F.3d 998 (9th Cir. 2004) .......................................................47, 54

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) .............................................................. 50, 51-52

*Hensley Mfg., Inc. v. ProPride, Inc.*,
  579 F.3d 603 (6th Cir. 2009) ............................................................24

*Jewel v. NSA*,
  673 F.3d 902 (9th Cir. 2011) .......................................................31, 33

*K. W. v. Armstrong*,
  789 F.3d 962 (9th Cir. 2015) ..............................................................46

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .......................................................19, 20

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ................................................................21, 40

*Lee v. Am. Nat'l Ins. Co.*,
  260 F.3d 997 (9th Cir. 2001) ..............................................................46

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992).................................................................43, 50, 52

*Machlan v. Procter & Gamble Co.*,
  77 F. Supp. 3d 954 (N.D. Cal. 2015)..................................................48

*Mason v. Nature's Innovation, Inc.*,
  2013 U.S. Dist. LEXIS 68072 (S.D. Cal. May 13, 2013) ...................54

*Mayfield v. United States*,
  599 F.3d 964 (9th Cir. 2010) ..............................................................43

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009) ................................................................48, 49

*Mezzadri v. Medical Depot, Inc.*,
  2015 U.S. Dist. LEXIS 91620 (S.D. Cal. July 1, 2015).................48, 54

*Munns v. Kerry*,
  782 F.3d 402 (9th Cir. 2015) ......................................................42, 43

*Novak v. United States*,
    795 F.3d 1012 (9th Cir. 2015) ............................................................................18

*Nurse v. United States*,
    226 F.3d 996 (9th Cir. 2000) ..............................................................................20

*Olsen v. Breeze, Inc.*,
    48 Cal. App. 4th 608 (1996) ........................................................... 41, 48, 53-54

*Penalbert-Rosa v. Fortuno-Burset*,
    631 F.3d 592 (1st Cir. 2011)................................................................................25

*Pratt v. Whole Foods Mkt. Cal., Inc.*,
    2014 U.S. Dist. LEXIS 46409 (N.D. Cal. Mar. 31, 2014) ..................................40

*Rahman v. Mott's, LLP*,
    2014 U.S. Dist. LEXIS 147102 (N.D. Cal. Oct. 15, 2014) .........................43, 45

*Richardson v. L'Oreal USA, Inc.*,
    991 F. Supp. 2d 181 (D.D.C. 2013)............................................................44, 46

*Ries v. Ariz. Beverages USA LLC*,
    2012 U.S. Dist. LEXIS 169853 (N.D. Cal. Nov. 27, 2012) ...............................45

*Robins v. Spokeo*,
    742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892 (2015)................51

*Saridakis v. JPMorgan Chase Bank*,
    2015 U.S. LEXIS 16751 (C.D. Cal. Feb. 11, 2015)..........................................48

*Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*,
    733 F.3d 1251 (9th Cir. 2013) .....................................................................19, 40

*Sidney-Vinstein v. A.H. Robins Co.*,
    697 F.2d 880 (9th Cir. 1983) ..............................................................................36

*Slater v. A.G. Edwards & Sons, Inc.*,
    719 F.3d 1190 (10th Cir. 2013) .........................................................................24

*Smith v. SEC*,
    129 F.3d 356 (6th Cir. 1997) ..............................................................................48

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................................ 18

*Steroid Hormone Prod. Cases*,
   181 Cal. App. 4th 145 (2010) ......................................................... 40

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) .............................................................. 49, 50

*Tourgeman v. Collins Fin. Servs. Inc.*,
   755 F.3d 1109 (9th Cir. 2014) ........................................................ 51

*Warth v. Seldin*,
   422 U.S. 490 (1975) ................................................................. 33, 51

*Weidenhamer v. Expedia, Inc.*,
   2015 U.S. Dist. LEXIS 36142 (W.D. Wash. Mar. 23, 2015) .................... 45, 46

*Yourish v. Cal. Amplifier*,
   191 F.3d 983 (9th Cir. 1999) ......................................................... 34

*Zucco Partners, LLC v. Digimarc Corp.*,
   2009 U.S. App. LEXIS 7025 (9th Cir. Feb. 10, 2009) ...................... 20

**Statutes**

28 U.S.C. § 1291 ....................................................................... 3

28 U.S.C. § 1332 ....................................................................... 3

28 U.S.C. § 1332(d)(2)(A) ........................................................ 4

28 U.S.C. § 1441 ....................................................................... 3

28 U.S.C. § 1446 ....................................................................... 3

28 U.S.C. § 1453 ....................................................................... 3

Cal. Bus. & Prof. Code § 17200, *et seq.* ................................. 4

Cal. Bus. & Prof. Code § 17204 ......................................... 48, 49

Cal. Bus. & Prof. Code § 17500, *et seq.* ................................. 4

Cal. Bus. & Prof. Code § 17535 ...............................................48, 49

Cal. Civ. Code §1750, *et seq*................................................4

Cal. Civ. Code § 1780 ...........................................................48, 49

**Other Authorities**

Fed. R. App. P. 10(e)(2) ........................................................6

Fed. R. Civ. P. 9(b) ...........................................................*passim*

Fed. R. Civ. P. 12(b)(1) ...........................................4, 5, 8, 18

Fed. R. Civ. P. 12(b)(6) ......................................................*passim*

Fed. R. Civ. P. 12(f) ...............................................4, 5, 8, 20

Fed. R. Civ. P. 59(e) .....................................................6, 14, 39

Fed. R. Civ. P. 60(b) ....................................................6, 14, 39

U.S. Const. art. III ..........................................................*passim*

## I.  INTRODUCTION

This case is a purported class action brought by a plaintiff who has no claim in her own right.  Plaintiff Jennifer Davidson alleged that she bought a single package of Scott brand flushable wipes sometime in 2013.  She saw the word "flushable" on the package and understood it to mean that the wipes were "suitable for flushing" – she could flush them without causing a problem in her home's plumbing or her local water treatment plant.  She flushed the wipes and never had a problem; the product performed as she expected it to perform based on the labeling she saw.

Notwithstanding her own experience with the product, Davidson asserts that she did not get her money's worth because she later became "concerned" that the wipes are not actually flushable.  Seeking to transform her "concern" into a class action, Davidson's counsel dropped her facts—which, accepted as true, show that she was promised a product that would perform in a particular way and received exactly that—into a complaint filled with allegations about advertising that Davison did not see, opinions about the word "flushable" that were not hers, and news reports about alleged harm that she did not suffer and that was not attributed to the product she purchased.  These allegations fail to state a claim for Davidson; they do not set forth specific facts explaining why the wipes she bought were mislabeled, and cannot support a conclusion that the wipes she bought would clog

home pipes or municipal water treatment plants, *i.e.*, that they were not "flushable" as she understood the term.

Davidson cannot recover for alleged harm to sewer systems in general. The generalized news reports she cites provide no basis for Davidson's claims against Kimberly-Clark; those reports say nothing about Davidson's own expectations or the particular product she purchased. They only confirm that Davidson seeks to litigate over and capitalize on the alleged grievances of others.

The district court was correct to dismiss Davidson's claims. The allegations about the advertising she relied on, what it meant to her, how she expected the product to perform, and how it actually performed do not add up to a false advertising claim against Kimberly-Clark. On appeal, Davidson mischaracterizes the district court's orders to argue that the orders are inconsistent and that, at a minimum, the inconsistency requires that she be given yet another chance to amend her complaint. Because the district court's orders are correct and consistent, this Court should affirm.

## II.    JURISDICTIONAL STATEMENT

Plaintiff filed this action in the Superior Court of California, County of San Francisco, as a purported class action asserting claims for common law fraud and violations of various California statutes. Defendants removed the case to federal court on April 17, 2014, under the Class Action Fairness Act of 2005 ("CAFA"),

28 U.S.C. §§ 1332, 1441, 1446, 1453.  The district court entered final judgment

dismissing the action on December 19, 2014.  Plaintiff filed a timely motion for

reconsideration on January 16, 2015.  The district court denied that motion on May

15, 2015.  Plaintiff filed a notice of appeal on June 11, 2015.  This Court has

jurisdiction under 28 U.S.C. § 1291.

## III.   ISSUES PRESENTED

**A**.   Whether Davidson failed to plead specific facts sufficient to allege
that the product she purchased had been misrepresented as flushable.

**B.**   Whether Davidson's failure to plead a misrepresentation also defeated
her claim of damages.

**C.**   Whether the district court properly struck from the original Complaint
allegations concerning news stories collected by Davidson's counsel
that Davidson had not previously seen and that did not identify a
Kimberly-Clark product as the cause of any harm to Davidson or
anyone else.

**D.**   Whether the district court properly dismissed the Amended Complaint
with prejudice because Davidson did not correct deficiencies the court
identified in the original Complaint.

**E.**   Whether the district court properly held that Davidson could not seek
injunctive relief because the alleged threat of future harm to her is too
speculative to confer Article III standing.

## IV.   STATEMENT OF THE CASE

### A.   Proceedings Below

Plaintiff Jennifer Davidson, a resident of San Francisco, filed this case in

California state court on March 13, 2014, against Kimberly-Clark Corporation,

Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales LLC

(collectively, "Kimberly-Clark"). Davidson asserted claims against Kimberly-Clark for common law fraud and violations of three California consumer protection statutes.[1] ER 16-17; ER 33-34. Her core allegation was that a Kimberly-Clark product she purchased, "Scott Naturals® Flushable Moist Wipes," was not "flushable" as advertised. ER 73; ER 89; ER 118; ER 137. Davidson purported to sue on behalf of a class of California purchasers of that product, as well as purchasers of four other Kimberly-Clark products that she had not purchased but that she alleged were similarly misrepresented.[2]

On April 17, 2014, Kimberly-Clark removed the case to federal court under CAFA, 28 U.S.C. § 1332(d)(2)(A). Kimberly-Clark moved to dismiss Davidson's original Complaint under Federal Rule 12(b)(1) for lack of standing, under Rule 12(b)(6) for failure to state a claim, and under Rule 9(b) for failure to plead fraud with particularity. Kimberly-Clark also moved under Rule 12(f) to strike certain of the Complaint's allegations. The district court granted Kimberly-Clark's motion in part and denied it in part on August 8, 2014. ER 33-53.

---

[1] Consumer Legal Remedies Act, Cal. Civ. Code §1750, *et seq*. ("CLRA"); False Advertising Act, Cal. Bus. & Prof. Code § 17500, *et seq*. ("FAL"); and Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL"). ER 16-17; ER 33-34.

[2] Those four products are Kleenex Cottonelle Fresh Care Flushable Wipes & Cleansing Cloths, Scott Naturals Flushable Moist Wipes, Huggies Pull Ups Flushable Moist Wipes, and U by Kotex Refresh flushable wipes. ER 120.

On September 5, 2014, Davidson filed her First Amended Class Action Complaint. ER 72-102. Kimberly-Clark moved to dismiss the Amended Complaint under Rules 12(b)(1), 12(b)(6), and 9(b), and to strike certain allegations under Rule 12(f). The district court granted the motion to dismiss and denied the motion to strike as moot in an order entered on December 19, 2014. ER 16-32. The court found that in light of Davidson's failure to correct the deficiencies in her original Complaint, any further attempt to amend would be futile, and so entered final judgment dismissing the action. ER 15; ER 32.

The district court dismissed both the original Complaint and the Amended Complaint for the same reason: Davidson alleged only that she had relied on the word "flushable," and both complaints lacked allegations of specific facts sufficient to explain why that designation was false as to the product Davidson purchased. ER 30-31; ER 45-47. Both orders also held that Davidson failed to establish that she had standing to seek prospective injunctive relief. ER 21-23; ER 39-41.

Davidson moved for reconsideration on January 16, 2015. On May 15, 2015, the district court denied that motion, holding that Davidson had failed to present any newly-discovered evidence and had failed to show any manifest error or injustice in the court's prior rulings or any intervening change in the law, as

required for reconsideration under Rules 59(e) and 60(b). ER 1-14. Davidson appealed on November 20, 2015.

After filing her appeal, and at the same time that she filed her opening brief, Davidson also filed a Motion to Supplement the Record. Dkt. 13-1. The motion seeks to add to the record printed versions of news articles that Davidson cited in her complaints. In its response, Kimberly-Clark disputed Davidson's assertion that the versions of the articles she submitted to this Court reflect what the district court "read and relied upon" when making its rulings, and disputed Davidson's claim that the articles had been omitted from the record "by error or accident" under Federal Rule of Appellate Procedure 10(e)(2). However, because the articles can be judicially noticed, Kimberly-Clark did not oppose this Court referring to them as it deems appropriate. Dkt. 22-1. The motion was referred to the merits panel and remains pending.

**B.      Statement of Facts**

Because this case was decided on the pleadings, the "facts" for purposes of appeal consist of the properly pleaded allegations of Davidson's complaints and the explanations and arguments she presented to support those allegations. The district court correctly considered and credited Davidson's well-pleaded allegations of material fact in determining that she failed to state a claim.

### 1. Davidson's Original Complaint

#### a. Plaintiff's Experience

Davidson's original Complaint alleged that she purchased a single package of Scott Naturals Flushable Moist Wipes ("the Product") in San Francisco sometime in 2013. ER 137. Davidson saw the word "flushable" on the Product's packaging. *Id*. She understood "flushable" to mean that the Product was "suitable for flushing down her toilet, without causing problems in her plumbing or at the water treatment plant." *Id*. She noticed that wipes labeled "flushable" cost more than other wipes and decided to pay the higher price because she believed flushing a wipe would be "easier and more sanitary" than throwing it in the trash. ER 138. Davidson alleged "several uses" of the Product and did not allege any problems with her plumbing or sewer system. *Id*. She noticed that the Product was thick and did not break up immediately in her toilet bowl. *Id*. She stopped using the Product because sometime after using a portion of it without incident, she "began to seriously doubt" that it was flushable. *Id*.

#### b. Other Allegations

Davidson's original Complaint included a variety of allegations about advertising, news articles, and websites that Davidson did not allege she had seen. It alleged that Kimberly-Clark's website asserted that Kimberly-Clark products passed industry tests; Davidson then alleged that those tests were "flawed." ER

130-133. The Complaint did not allege that Davidson was aware of the tests or that she understood "flushable" to mean that the Product had passed any particular test. The Complaint also quoted municipal water officials in other locales who opined that only human waste and toilet paper should be flushed and that, in their view, "flushable" should mean "disperses" in water within seconds or minutes, like toilet paper. ER 121-123. Davidson did not allege that she, or consumers in general, understood "flushable" to mean that a product meets the approval of those water officials, or that it disperses at any particular rate or at the same rate as toilet paper. Nor could she, because she admits that she intended to buy "moist wipes for household use" that are sold as "pre-moistened products" and sit on the shelves of her local Safeway without dissolving. ER 130, ER 137; *see* ER 12. The original Complaint also cited several articles published on the internet describing problems in various municipalities. ER 133-137. Davidson did not allege she saw the articles or understood them to be about the Product she bought or about her own municipality's water treatment facilities.

### c.    Dismissal of the Original Complaint

On August 8, 2014, the district court granted in part and denied in part Kimberly-Clark's motion to dismiss under Rules 12(b)(1) and 12(b)(6), and also granted in part and denied in part its motion to strike under Rule 12(f). ER 33-53. The court held that Davidson failed to allege specific facts explaining why the

product she bought was not "flushable," and that she lacked standing to seek injunctive relief. *Id*.

First, the court held that Davidson's alleged past injury-in-fact – the premium she said she paid for the Product because of the alleged misrepresentation that it was "flushable" – was sufficient to confer standing to seek damages. ER 38. But, because Davidson had no plans to buy the Product again even if the label changed (she alleged only that she "might" consider buying a similar product "if" Kimberly-Clark changed the product to be what she considers flushable), the court held that her alleged future injury was too speculative to confer standing for injunctive relief. ER 40-41.

Next, the court held that Davidson had failed to allege specific facts sufficient to plead a misrepresentation. ER 45-46. The court noted that pleading with particularity means more than alleging facts to identify the transaction; the plaintiff must explain with specific facts why the disputed statement was false or misleading. ER 45. The Complaint mentioned various forms of advertising, but Davidson alleged that she relied only on the word "flushable" on the Product's packaging. ER 47. Davidson did not allege specific facts to explain why that term was false as applied to the Product—that is, she did not allege how she came to believe the Product was not flushable, given that she did not allege that she was unable to flush the Product or that it caused any problems with her plumbing or

local sewer system.  *Id*.  Her alleged "doubt" was not enough to support her conclusion that the Product was misrepresented.  *Id*.  The court denied Kimberly-Clark's motion to dismiss as to alleged fraudulent omissions, noting that it was "not clear" which of two possible approaches Davidson was pursuing for that portion of her claim.  ER 49.

Finally, the court ruled on Kimberly-Clark's motion to strike.  The court denied the motion as to advertising that Davidson did not see because the court found that such advertisements were potentially relevant to her class allegations.  ER 52.  But the court struck as irrelevant allegations concerning news articles reporting problems at municipal waste treatment plants in other areas.  ER 53.  Davidson did not allege that she was aware of the articles, so there was no connection between the articles and her alleged doubts about the Product.  ER 52-53.  And, the court explained, the articles were not relevant to the Product she purchased because "no mention is made of any of Kimberly-Clark's products" in any cited article.  ER 53.

### 2.    Davidson's Amended Complaint

#### a.    Amendments to the Complaint

Davidson's Amended Complaint asserted the same causes of action based on the same premises.  ER 72-102.  It added an allegation that "[r]easonable consumers understand the word 'flushable' to mean suitable for disposal down a

toilet." ER 75.  Davidson also added two paragraphs to her description of her "experience."  *Compare* ER 89-90 *with* ER 137-138.  In the first new paragraph, she alleged that she conducted unspecified "research" that "increased her concerns" that the Product she purchased was not flushable.  ER 89-90, ¶ 54.  In the second, she alleged that she "would purchase truly flushable wipes" if it were "possible to determine prior to purchase if the wipes were suitable to be flushed."  ER 90, ¶ 57.  She also added the heading "Other Consumers Have Been Similarly Deceived" and pasted in a selection of customer complaints from the Cottonelle website.  ER 90-91.  The complaints are not about the Product that Davidson purchased, and Davidson does not allege that the customer complaints reflect anything that happened in her sewer system or one like hers.  Three refer to septic tanks and another refers to a rural waste treatment system.  ER 90-91.

Davidson deleted some but not all of the previously stricken allegations concerning news articles.[3]  She added an allegation that problems in various municipalities "have been tied specifically" to Kimberly-Clark wipes, but only cited to a subset of the same articles the court previously found did not include any

_____

[3] Davidson deleted references to the articles cited at paragraphs 28, 29, 30, 60, 61, 62, 63, 66, and 68 of the original Complaint.  *Compare* ER 117-141 *with* ER 73-94.

such statements.[4] *Compare* ER 86-89 *with* ER 133-137; *see also* ER 53 (explaining that the cited articles "address 'flushable wipes' in general; no mention is made of any of Kimberly-Clark's products").

### b. Dismissal of the Amended Complaint

The district court dismissed the Amended Complaint after oral argument on Kimberly-Clark's motion to dismiss. At the hearing, Davidson's counsel confirmed that Davidson did not have an omissions claim apart from her claim that "flushable" was a misrepresentation. SER 6-7. Davidson's counsel also clarified that his law firm, not Davidson, had compiled the news reports identified in the Amended Complaint; they were cited to show that "others have concluded that the product is not suitable for flushing." SER 3. Davidson's counsel again asserted that the articles "specifically reference the defendants' wipes" without addressing the court's previous determination that they did not. *Id.*

---

[4] For example, the Amended Complaint included the same reference to an article about Bakersfield that appeared in the original Complaint, but the Amended Complaint asserted that officials tested wipes "including Defendants' Cottonelle Wipes." *Compare* ER 86, ¶ 49 *with* ER 133, ¶ 57. The copy of the cited article that Davidson submitted with her Motion to Supplement does not say that Cottonelle Wipes were tested. *See* Dkt. 13-2, at 2-3. The Amended Complaint also described an article about Jacksonville Beach, Florida, as explaining that "Cottonelle and Scotts Wipes" are not flushable, but the article only includes a photograph of the wipes on a table with various other flushable wipes products; it does not specify a Kimberly-Clark product as the cause of any harm. *See* ER 87-88, ¶ 50; ER 136, ¶ 65; Dkt. 13-2, at 18.

Following the hearing, the court issued an order holding for a second time that Davidson had failed to allege specific facts explaining why the Product she bought is not flushable, and that she lacked standing to seek injunctive relief. ER 16-32. As to injunctive relief, the court reiterated that Davidson alleged only a hypothetical injury based on the possibility that Kimberly-Clark at some point in the future might redesign the wipes to her satisfaction; that allegation was too speculative to confer standing. ER 22-23.

As to Davidson's misrepresentation claim, the court held that Davidson's specific factual allegations did not explain why the designation "flushable" was false as to the particular Product she purchased. ER 31. As the court explained:

> Having personally experienced no problems with her plumbing on account of her use of the Scotts Naturals® wipes or any of the products at issue, plaintiff must point to some other specific facts showing that the designation "flushable" is false.

ER 29. Davidson pointed to news reports and customer complaints, but neither constituted specific facts explaining why the Product Davidson bought was not "flushable," as she understood that word. ER 29-30. The news articles reported many causes for clogs at sewer plants and did not specifically attribute any harm to the particular Product plaintiff purchased. ER 29. They constituted "general allegations" that "news reporters in three cities stated that some wipes (not necessarily flushable wipes and not necessarily Kimberly-Clark wipes) have caused clogs or blockages in their local wastewater systems." ER 31. Customer

complaints were also "vague and lacking in detail" and appeared to be about damage to septic systems, not municipal treatment plants.  ER 30.  Davidson's assertion that they showed that the Product was not flushable, the court held, was an "unwarranted conclusion."  *Id.*  Because Davidson proffered only the same allegations in support of her fraudulent omission claim, it also failed.  ER 31.  After finding no basis for the misrepresentation or omissions claims, the court also held that Davidson could not allege any damages.  ER 31-32.

The court granted Kimberly-Clark's motion to dismiss without leave to amend because Davidson had not been able to correct the deficiencies the court had identified in the original Complaint; the ruling rendered moot Kimberly-Clark's motion to strike.  ER 32.

### 3.    Davidson's Motion for Reconsideration

Davidson moved for reconsideration on three grounds, each of which the district court rejected.  ER 1-14.  First, Davidson argued that the court should have remanded her request for injunctive relief to state court.  The court noted that Davidson had not filed a motion seeking such a remand and that her request thus was not properly presented.  ER 5-7.  Moreover, the court was "flummoxed" by the contention that a remedy could be remanded without an accompanying cause of action; it found that Davidson's authorities were inapposite and unpersuasive and provided no basis for relief under Rules 59(e) or 60(b).  ER 3-7.

14

Second, Davidson argued that the court should have again granted leave to amend because the court's order on the Amended Complaint addressed a "different argument" than the original order, and if granted leave, Davidson could add allegations about the California Plumbing Code to save her claims. ER 11-12. The court explained that both of its orders had held that Davidson failed to plead with particularity facts that showed her basis for asserting that "flushable" was false as to the Product she purchased. ER 9; ER 11. Specifically, the court explained that its first order held that Davidson had alleged only that she relied on the word "flushable" and "offered no clear basis or any particularized facts to support her assertion that Scotts Naturals® wipes were not flushable." ER 9. Likewise, the second order held that Davidson "still had not alleged facts showing that the representation 'flushable' was false or misleading as to any of the Kimberly-Clark products at issue." ER 11. The new facts Davidson offered – the California Plumbing Code – did not provide "any additional basis" for her claims and also were not facts previously unavailable to her and her counsel. ER 12.

Finally, the district court rejected Davidson's contention that it had erred in holding that Davidson had failed to allege that she had suffered damages. The court explained that Davidson had sufficiently alleged standing because she asserted that she bought a product because of a misrepresentation, but she

ultimately failed to support that conclusory allegation with specific facts that showed how the advertising she allegedly relied upon was false or misleading. ER 14.

## V. SUMMARY OF ARGUMENT

The district court properly dismissed Davidson's complaints because they failed to allege specific facts sufficient to support her allegation that the labeling on the Product she bought was false or misleading. Davidson contends that the district court misapplied pleading standards by failing to accept as true allegations based on news articles and complaints by persons other than Davidson. But those allegations asked the court to assume that all flushable wipes damage plumbing and sewers and then conclude on that basis that Davidson has stated a claim against Kimberly-Clark. Neither the specificity requirements of Rule 9(b) nor the plausibility requirements of *Twombly/Iqbal* permit that result; references to wipes in general do not explain with specific facts why the particular Product Davidson bought was mislabeled as flushable, or make it more than merely possible that the particular Product she bought is not suitable for disposal by flushing.

For all the sweeping assertions in the complaints, Davidson does not allege a single example of Scott wipes causing damage anywhere. So, on appeal, Davidson tries to make this case about "dispersion" rather than damage. The Amended Complaint alleges in a variety of ways that the Product Davidson bought does not

disperse as quickly as toilet paper. It then lumps all such products together into the category of "non-dispersibles" and cites back to news articles about such products in general. This is just another attempt to use generalized news reports as a substitute for specific facts about Davidson's actual experience and the Product she bought. The district court properly rejected this attempt.

Davidson raises other issues on appeal. She argues that the district court erred by holding that she alleged no damages (Br. 32-35); that holding followed directly, and properly, from the court's conclusion that Davidson had not sufficiently alleged that the Product she bought was misrepresented.

Davidson also argues that the district court erroneously required her to allege how she "came to believe" the Product was misrepresented. Br. 35-39. But that argument mischaracterizes the court's orders. The court was pointing out that Davidson's alleged "doubts" about the Product based on her own experience were insufficient to support her claim that the Product was misrepresented.

Davidson faults the district court for striking allegations concerning news articles, although she concedes that this argument matters only if she prevails on her other arguments and secures a remand. Br. 39-40. The district court did not abuse its discretion by finding the articles irrelevant to Davidson's claims. And, in any event, that decision is immaterial because in its second order the district

court again concluded, without striking the articles, that Davidson had failed to state a claim.

Davidson also argues that she should have been granted leave to amend. Br. 41-44. But the only allegations Davidson says she could have added relate to the California Plumbing Code. As the district court found, there was no reason those allegations could not have been made earlier. More importantly, the supposed relevance of the Plumbing Code hinges entirely upon Davidson's core assertion that the Product she purchased was misrepresented to be "flushable," an assertion the court properly found she had failed to support with specific factual allegations. Her argument on appeal merely confirms that the amendment she proposed would have been futile.

Finally, Davidson offers various reasons why this Court should find she has standing to pursue an injunction. Br. 46-62. These arguments fly in the face of established principles of Article III standing. In all events, Davidson's failure to state a claim renders the issue of remedy moot.

## VI. STANDARD OF REVIEW

This Court reviews rulings under Rule 12(b)(1) *de novo*. *Novak v. United States*, 795 F.3d 1012, 1017 (9th Cir. 2015). It has a "special obligation" to satisfy itself as to its own jurisdiction as well as the jurisdiction of the lower court in the case under review. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998).

This Court also reviews *de novo* the dismissal of claims under Rule 12(b)(6). *Crowley v. Nevada*, 678 F.3d 730, 736 (9th Cir. 2012). To survive a motion to dismiss, a complaint must be plausible on its face; allegations that are "merely consistent" with a defendant's liability do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court accepts as true "all well-pleaded allegations of material fact [but is] not required to accept as true allegations that contradict exhibits attached to the complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quotations and citations omitted).

All of Davidson's claims involve allegations of fraud that are subject to Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). This Court reviews dismissal under Rule 9(b) *de novo*. *Id.* at 1124. Rule 9(b) requires a plaintiff to plead with particularity the circumstances constituting a fraud. *Id.* This requires more than pleading the neutral facts of a transaction; the plaintiff must also explain why the statement at issue was false or misleading. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds*. The purpose of Rule 9(b) is not only to provide defendants with adequate notice, but also to protect defendants' reputations and to prohibit plaintiffs from

imposing "enormous social and economic costs" with baseless claims. *See Kearns*, 567 F.3d at 1125 (quotations and citations omitted).

This Court reviews for abuse of discretion a decision to grant a motion to strike pursuant to Rule 12(f). *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000).

This Court also reviews for abuse of discretion a decision to dismiss a complaint with prejudice. *Zucco Partners, LLC v. Digimarc Corp.*, 2009 U.S. App. LEXIS 7025, **65-66 (9th Cir. Feb. 10, 2009). "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Id*. (quotations and citations omitted).

## VII.  ARGUMENT

### A.  Davidson's Allegations do not State a Claim.

Davidson argues that the district court misapplied pleading standards by focusing on Davidson's experiences and not accepting as true allegations about news reports, complaints by others, and product testing.  Br. 27-31.  These arguments misconstrue the court's orders, overstate the factual material in the complaints, and understate applicable pleading requirements.  Because all of Davidson's claims are for fraud or misrepresentation, they are subject to both Rule 9(b)'s particularity requirement and *Iqbal*'s plausibility standard.  *Cafasso v. Gen.*

*Dynamics C4 Sys. Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). The district court correctly held that Davidson did not allege specific facts sufficient to explain the basis of her claims under Rule 9(b), or suggest more than the mere possibility that the particular Product she bought was mislabeled. *See id.*

### 1. Davidson's Allegations About Her Experience Neither Explain with Specific Facts Why the Product Is Not "Flushable" nor Do They Raise Her Claims Above the Level of Mere Speculation.

Davidson alleged that she bought the Product with the understanding that "flushable" meant "suitable for flushing" in the sense that flushing the Scott wipes would not cause "problems in her plumbing or at the water treatment plant." ER 89, ¶ 52. She also alleged that reasonable consumers understand the word "flushable" to mean "suitable for disposal down a toilet," and that the issue of falsity depends on the "likely outcomes" of flushing. ER 75, ¶ 18. So, under Davidson's theory, the word "flushable" is likely to deceive Davidson and other consumers only if the Product is not flushable in that sense. *See, e.g., Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 331-32 (2011) (explaining that an allegation about why a plaintiff bought a product must correspond to the allegations about how the product is misrepresented for there to be an economic loss "as a result" of the misrepresentation). That is why the analysis of Davidson's claims properly begins with whether she alleged that she experienced "problems in her plumbing or water treatment plant."

Davidson made no such allegations. Neither complaint alleges that the Product caused any problem in either her home's plumbing or her municipality's water treatment plant. In both complaints, the only allegation regarding Davidson's own experience with the Product was that it felt "thick, unlike toilet paper" and did not "break up in the toilet bowl like toilet paper." ER 138, ¶ 71; ER 89, ¶ 53. According to her original Complaint, that caused her "serious[] doubt." ER 138, ¶ 71. Her Amended Complaint elevated her "doubt" to "concern" and alleged that after-the-fact "research" contributed to her concerns (ER 89, ¶¶ 53, 54); this allegation did not provide any additional facts to explain the basis of her claims, or allege more than the mere possibility that the Product was misrepresented. The district court properly began with this analysis and then considered whether other allegations filled those gaps. *See* ER 29.

### 2. The Remaining Allegations do not Fill the Gaps in Davidson's Pleadings.

As the district court held, Davidson's other allegations do not fill those gaps. Davidson argues that the district court dismissed her claims only because it did not accept as true her allegations about news reports, customer complaints, and product testing.[5] Br. 27-30. But these were not allegations of specific facts explaining

_____

[5] On appeal, Davidson suggests that the California Plumbing Code could also support her allegations of falsity. Br. 23. She is wrong. Beyond the fact that the

why the Product she purchased is mislabeled, nor did they raise Davidson's claims above the level of speculation.

### a. News Reports

The news reports cited in the complaints do not include any specific facts about the Product Davidson bought. On appeal, Davidson contends that the articles "specifically reference Defendants' wipes as causing the sewer blockages" (Br. 28) and that "three cities [] have specifically found Defendants' wipes unsuitable for flushing" (Br. 24). But these characterizations are both inaccurate and insufficient.

The articles that Davidson refers to as "specific[]" to Kimberly-Clark do not reflect that any city has ever "specifically found Defendants' wipes" unsuitable for flushing." Br. 24. One of the articles reports sewer problems in Bakersfield, California; it does not mention Kimberly-Clark at all. The assertion that Bakersfield "specifically found" Kimberly-Clark wipes unsuitable for flushing appears to be based on a photograph of wipe products that was reproduced in the

_____

district court properly rejected her belated request for leave to add allegations regarding the Plumbing Code (*see infra* at 39-40), her reference to the Plumbing Code assumes the very fact that she tries to use the Code to prove: that the Product was not flushable because it could not be flushed without risking harm to the sewer system. The Plumbing Code offers no specific facts to support her claim of a misrepresentation.

Complaint.  *Compare* Br. 24 *and* ER 87 *with* Dkt. 13-2 at 2-3.  The cited articles

about San Antonio, Texas, and Jacksonville Beach, Florida, mention Kimberly-

Clark as a manufacturer of flushable wipes and paraphrase general comments from

municipal water officials; they do not specifically identify any Kimberly-Clark

product as the cause of any harm or even mention the Product Davidson bought.

*Compare* Br. 24 *with* Dkt. 13-2 at 6-7, 14-15.  Neither the district court nor this

Court is required to credit as true Davidson's mischaracterization of these articles

as alleging that the Product Davidson bought was misrepresented.[6]  Here, the most

the articles allege is that some flushable wipes may have contributed to the

problems reported in the articles, along with dirt, debris, and wipes that were never

---

[6] *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 & n.7 (9th Cir. 2013) (noting
that the district court properly reviewed and rejected plaintiff's characterization of
material incorporated by reference); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d
992, 998-1006 (9th Cir. 2010) (considering web pages cited in the complaint and
finding that they could not be interpreted to support plaintiffs' claims); *Gonzalez v.
Planned Parenthood of L.A.*, 759 F.3d 1112, 1114-16 (9th Cir. 2014) (concluding
that letters attached to the complaint rendered implausible the claim that defendant
knowingly submitted false claims); *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d
603, 610-12 (6th Cir. 2009) (describing exhibits attached to the complaint and
rejecting plaintiffs' allegation that they showed a likelihood of confusion); *Slater v.
A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1198 (10th Cir. 2013) (consulting SEC
filings and concluding that they did not support plaintiff's assertion that statements
in an 8-K were misleading).

labeled flushable in the first place.  Davidson's further assertion that the problems were due to Kimberly-Clark's products is pure speculation.[7]

Davidson's arguments on appeal misrepresent other articles too.  For example, she repeatedly insinuates that Kimberly-Clark wipes have a "tendency [] to tangle with each other and other debris, forming long ropes that get caught in pipes and pumps, causing clogs."  *See, e.g.,* Br. 24 (citing ER 83-39, ¶¶ 42-47, 49-51); *see also* Br. 28 (citing ER 75 & 85, ¶¶ 18, 46).  But the allegation in the Complaint is that "*some brands* of flushable wipes" have a "propensity to tangle . . . ."  ER 85, ¶ 46 (emphasis added).  None of the sources in the cited paragraphs identifies a Kimberly-Clark product that caused the alleged problem.  This example typifies Davidson's strategy below and on appeal.  She attempts to use allegations about wipes in general to create the impression that the particular Product she bought will cause clogs and thus is not "flushable," even though the complaints do not allege any problems or harm actually attributed to that Product.

---

[7] *See Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 596 (1st Cir. 2011) (distinguishing between well-pleaded allegation that personnel decisions were within the governor's authority generally and the "further assertion" that the governor made the particular personnel decision at issue and finding that the latter was "pure speculation" about a "mere possibility" that was not sufficient under *Twombly/Iqbal*).

In other contexts, courts have held that this kind of impressionistic pleading does not satisfy Rule 9(b).[8]  The result should be the same here.

Out-of-context quotes or paraphrases of water officials' views also provide no help to Davidson.  They do not allege anything about what Davidson or reasonable consumers expect or how the Product at issue measures up to those expectations.  Some water officials are reported as opining that only human waste and toilet paper should be flushed[9]; there is no allegation that Davidson or any reasonable consumer shares that view—if they did, of course, a "flushable" label on a wipe product could not possibly mislead them—or understood "flushable" to mean that the product meets the approval of some subset of municipal water officials.  And, references to the views of water officials generally do not say anything about the likelihood that any particular product is or is not flushable under Davidson's definition.

_____

[8] *See, e.g., Cafasso*, 637 F.3d at 1055 (explaining in the False Claims Act context that general allegations of "unsavory conduct" do not plead specific instances of fraud); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1553 (explaining in the securities context that "innuendos are insufficient" to satisfy Rule 9(b)).

[9] *See* ER 80-81, ¶ 34; Dkt. 13-2 at 13 ("the only items you should flush are human waste and toilet paper"); Dkt. 13-2 at 14-15 (quoting a water agency spokesperson as saying that only "the three P's: poop, paper, and pee" should be flushed); Dkt. 13-2 at 29 ("DO . . . flush ONLY Human Waste and Toilet Paper.") (emphasis in original omitted); Dkt. 13-2 at 32-33 (attributing to a water official the view that "nondispersibles" means "anything other than human waste and toilet paper" but noting that "[o]nly the wastewater industry uses this definition").

In the final analysis, Davidson's various references to internet articles cannot fill the gaps in her complaints. At best, the specific facts alleged are that some unspecified wipes reportedly have contributed to problems in other cities. As Davidson's counsel described the articles, they were cited to show that "others have concluded that the Product is not suitable for flushing." SER 3-5. "Other people say so" is neither a specific fact that explains why the particular Product Davidson bought is mislabeled, nor an allegation making it more than mere speculation that the Product Davidson bought will cause clogs or other problems. This is particularly so when "other people" have merely asserted that a broad category of products should not be flushed, without drawing specific conclusions about the particular Product at issue. *See Aloudi v. Intramedic Research Grp.*, 2015 U.S. Dist. LEXIS 89366, **13-15 (N.D. Cal. July 9, 2015) (analyzing quoted statements from the FDA and FTC that plaintiff alleged showed "scientific consensus" about a class of products and concluding that they were "general statements devoid of context" and not "tied to the Product or Defendant's specific representations about the Product"). The district court was correct to treat allegations about news articles as "general allegations" that did not help Davidson meet her pleading obligations under Rule 9(b). ER 29-31. In light of the complaints' failures to allege specific facts showing that the particular Product Davidson bought was not "flushable" as labeled, *i.e.,* that it caused problems for

her or others in her situation, these allegations also do not raise her claims above the level of speculation.

### b.    Customer Complaints

Davidson asserts that the district court erred by holding that allegations concerning complaints by other consumers did not satisfy her pleading obligations. Br. 29-30.  Davidson ignores the context of her allegations and of the court's ruling.  In the Amended Complaint, Davidson characterized the consumer comments as showing that "other consumers have been similarly deceived."  ER 90-91.  Given Davidson's characterization of the comments as examples of "deception," the district court properly considered whether those allegations satisfied Rule 9(b).  Also, the court had just explained that "[h]aving personally experienced no problems with her plumbing . . . plaintiff must point to some other specific facts showing that the designation 'flushable' is false."  ER 29.  The court observed that the consumer complaints did not provide the missing facts; they alleged only that other people have complained about a different product they used in different circumstances.  There is no mention of Scott wipes or any municipal water treatment plants.  A plaintiff cannot satisfy Rule 9(b) by simply reporting general assertions by non-parties which do not themselves satisfy Rule 9(b)'s

requirements.  Davidson's non-particularized, non-pertinent allegations about others cannot fill the gaps in her own fraud pleading.[10]

On appeal, Davidson backs away from her characterization of the consumer complaints as showing "deception" and instead says they were not intended to allege "individual instances of fraud" but only to "support" her allegation that the wipes she bought are not flushable.  Br. 29.  Even if not waived, her new explanation is unavailing:  the allegations concerning the assertions of others provide no specific facts that explain why the particular Product Davidson bought (which is not mentioned in the comments of other consumers) is not flushable, nor do they make it more than merely possible that the Product she bought is mislabeled.

### c.      Product Testing

Davidson faults the district court for noting that her product-testing allegations suggested that her definition of "flushable" might be unworkable.  Br. 30-31.  She claims that the court's comment shows that the court went "outside of

---

[10] Davidson cites one district court decision to suggest these allegations suffice. Br. 30 n.7 (citing *Asghari v. Volkswagen Grp. of Am., Inc*., 42 F. Supp. 3d 1306, 1339 (C.D. Cal. 2013)).  But that court's comments were made in the context of analyzing a breach of implied warranty claim that the court reached only after holding that other allegations sufficed under Rule 9(b) to state CLRA and UCL claims on the same theory.

Plaintiff's allegations." Br. 31. On the contrary, the court's comment merely reflects the collection of confused, vague, and generalized allegations that Davidson interspersed with her product-testing allegations, and the fact that Davidson's understanding of "flushable" had nothing to do with product testing. ER 11-14. For example, she alleged as a general matter that "wipes can" reach a treatment plant "sometimes" in a few minutes; moist lotion used in "certain wipes" means those wipes could travel more quickly; and "some brands" may tangle. ER 84-85. These and other allegations, many of which simply refer back to the same general news items discussed above, conveyed the differences between wipes products and various water systems to which the court alluded in its order.

On appeal, Davidson contends that her product-testing allegations "merely establish that [industry] tests do not simulate real-world conditions." Br. 31. But elsewhere Davidson insinuates that the testing allegations support a further inference that the Product Davidson bought will not "break apart under normal operating conditions" or will cause "ragging." *E.g.,* Br. 23. Because the product-testing allegations only criticize industry tests and then join those criticisms with vague generalizations about how "certain wipes" and "some brands" behave "sometimes," they do not support any inference about how the Product Davidson bought will perform, nor do they explain why Davidson, or any other consumer, would believe that Product was mislabeled.

**B. Davidson's Failure to Plead a Misrepresentation also Defeated Her Damages Claim.**

Davidson contends that the district court erred by holding that she had not sufficiently alleged damages and that this ruling was inconsistent with the court's determination that she had standing to pursue damages. Br. 32-33. Davidson misunderstands the issue. In finding at the outset that Davidson had standing to assert a claim for damages, the district court accepted Davidson's argument that she could have suffered an injury even if her pipes were not clogged; she alleged she bought the Product based on a misrepresentation, and that sufficed for standing purposes. ER 38-41; *see Jewel v. NSA*, 673 F.3d 902, 911 (9th Cir. 2011) (noting that in the context of a standing analysis "[g]eneral factual allegations of injury resulting from the defendant's conduct may suffice") (quotations and citations omitted). Having determined that it had jurisdiction to consider Davidson's claims, the court then had to consider whether Davidson had adequately pleaded a misrepresentation, and properly held that she had not. ER 30. Because Davidson did not allege any other form of harm – only economic harm resulting from a purchase based on an alleged misrepresentation – the finding that Davidson failed

to properly plead a misrepresentation precluded the possibility that she had suffered damages.[11]  As the court explained:

> Even though plaintiff alleged economic injury for purposes of standing by asserting that she purchased the Scotts Naturals® product only because the packaging stated that the wipes were "flushable," she failed to allege facts showing that the use of the word "flushable" was false or misleading, and failed to allege facts showing that she suffered any harm from her use of the product.

ER 14.  The court's holding was correct.

Davidson's argument to the contrary improperly equates allegations sufficient to establish standing to sue with the allegations required to state a claim for fraud or misrepresentation.  They are not the same thing.  An allegation that a plaintiff paid a premium price for a product based on a misrepresentation concerning the content or performance or quality of the product may suffice to allege injury for Article III standing purposes.  Whether the allegations are also sufficient to state a claim and satisfy the particularity requirements of Rule 9(b) is another matter entirely.  *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1119, 1122 (9th Cir. 2013) (explaining that allegations sufficient for Article III standing lacked the "level of factual specificity" necessary to plead a required element of plaintiffs' securities claim); *Gold v. Lumber Liquidators*, 2015 U.S.

---

[11] For that reason, as the court observed, its ruling with respect to damages was not essential to its disposition of the case.  ER 13.

Dist. LEXIS 165264, *13 n.1 (N.D. Cal. Nov. 30, 2015) (holding that allegations were sufficient for Article III standing but "this does not mean the alleged misrepresentations are also both actionable and sufficient to survive the heightened pleading standard under Rule 9(b)").  The fact that Davidson cleared the Article III hurdle has nothing to do with whether she ultimately stated a viable claim on the merits.  *See Jewel*, 673 F.3d at 907 n.4 (explaining that whether the plaintiff stated a claim is a decision on the merits that follows after subject-matter jurisdiction is established); *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008) ("The jurisdictional question of standing precedes, and does not require, analysis of the merits.") (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (standing "in no way depends on the merits of the contention that particular conduct is illegal.")).  Indeed, were the law otherwise, Rule 12(b)(6) dismissals would be logically impossible where a plaintiff had standing to assert a claim.  *See Bell v. Hood*, 327 U.S. 678, 682 (1946) (explaining that a "court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief" and that if a "complaint do[es] not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction").

**C.    Davidson Mischaracterizes the District Court's Statement that She did not Allege How She "Came To Believe" the Product Was Misrepresented as Flushable.**

Davidson contends that the district court erred in its first order because it required Davidson to plead "how she came to believe" the wipes she bought were not flushable.  Br. 35-39.  Davidson mischaracterizes the court's statement.  The court was pointing to the gap in the pleadings that Davidson's allegations created.  As the court explained in the next sentence of the order, Davidson "[did] not allege that she was unable to flush the product down the toilet, or that the product caused any problems with her pipes, just that after several uses of the wipes she 'began to seriously doubt that they were truly flushable.'"  ER 47.  The court's observation reflected that the specific facts Davidson alleged about her own experience provided no basis to conclude that the wipes were not flushable, *i.e.*, that a misrepresentation had occurred.  Davidson needed to go beyond the reasons she had "doubts" about the Product; she had to explain with specific facts why the "flushable" label for the Product was an affirmative misrepresentation in order to allege falsity in compliance with Rule 9(b).  *See* ER 45 (citing *Yourish v. Cal. Amplifier*, 191 F.3d 983, 992-93 (9th Cir. 1999) (the plaintiff must explain "why the disputed statement was untrue or misleading at the time it was made")).

This was expressly addressed during the hearing on the motion to dismiss, where the parties discussed the court's direction that Davidson needed to allege

facts showing how she came to believe the Product was not flushable and that this direction reflected the requirement that facts supporting the falsity element of a fraud claim must be specifically alleged. SER 10 (Kimberly-Clark's counsel: "Your Honor told Plaintiff in her last order that Plaintiff had to amend the Complaint to state how Plaintiff discovered that the wipes were not, in fact, suitable for flushing … and the Plaintiff didn't do that. And it really is not accurate to say … that's not an element of the cause of action. Of course it is. It's an element of falsity. … The element of fraud is that the representation was, in fact, not accurate."). The court explained this again when Davidson sought reconsideration. In describing its first order, the court noted again that Davidson had not alleged any clogs or other problems and alleged only "serious[] doubt[s]" about the product. ER 9. "In other words, plaintiff had offered no clear basis or any particularized facts to support her assertion that the Scott Naturals® wipes were not flushable – or that the statement that they were flushable was false – even after the court raised the issue of how plaintiff 'came to believe' they were not flushable." ER 9. Davidson's current professions of surprise cannot be squared with the record.

Davidson alternatively insists that her allegations about how the Product was manufactured, along with allegations about product testing, news reports, and customer complaints, filled the gap identified by the court. Br. 35-39. But the

allegations about how the Product was manufactured only restated Davidson's allegation that she observed that the Product does not disperse "in the water in a toilet." ER 83, ¶ 40. Those allegations say nothing about the outcome of flushing the Product. As described above, Davidson's remaining allegations also fail to carry her pleading burden. *See supra* at 22-30.

### D. The District Court Properly Granted Defendants' Motion to Strike.

Davidson argues that the district court erred by granting in part Kimberly-Clark's motion to strike. Br. 39-41. Davidson concedes, however, that this issue is not a basis for overturning the district court's judgment and could be relevant only in the event of a remand. Br. 39-40. And, ultimately, the district court dismissed the Amended Complaint without striking the allegations concerning news articles. ER 13-14; ER 17. *See Sidney-Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir. 1983) (striking motion for reconsideration was harmless where the court considered and denied the motion before striking it and there was no detrimental impact on plaintiff).

Nevertheless, the district court's ruling striking those allegations in the original Complaint was correct. As the court held, the articles are not material to Davidson's claims. ER 52-53. And the exaggerated claims that Davidson continues to make about the articles confirm that they were properly stricken. *See supra* at 23-26. For example, on the basis of passing references to Kimberly-Clark

in generalized reports from Texas and Florida, Davidson contends:

"Municipalities all over the country have experienced numerous problems that have been tied specifically to Defendants' Flushable Wipes." ER 86. As shown above, that is not an accurate description of the articles. "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quotations and citations omitted), *rev'd on other grounds, Fogerty v. Fantasty, Inc.*, 510 U.S. 517 (1994). Here, to litigate whether Kimberly-Clark's products were "tied specifically" to any of the alleged blockages reported in the news articles about other products and other cities would require a massive expenditure of time and money.

Moreover, as Davidson's counsel explained, the articles were not offered to show that Kimberly-Clark products actually caused any of the alleged harm, but only to show "others have concluded that the product is not suitable for flushing." SER 3. Not one of the articles is necessary to make that point, which is irrelevant in any event, and Davidson's repeated attempts to exaggerate what the articles say underscores why the district court properly ordered them stricken.

Finally, the district court did not resolve any factual issues by striking the allegations concerning the articles. Br. 39-40. It merely disagreed with Davidson's legal conclusion that they were relevant to her claims. *See Brown,*

724 F.3d at 1248 (explaining that both the district court and appellate court could reject the plaintiff's conclusions about material incorporated by reference into the complaint because courts are not required to accept as true "unreasonable inferences" when ruling on a motion to dismiss). The court's ruling was correct.

### E. The District Court Properly Denied Further Leave to Amend.

Davidson's argument that the district erred by denying further leave to amend rests on two premises, both of them false. First, she claims that the basis on which the district court dismissed her Amended Complaint was different than the basis on which it dismissed the original Complaint. Second, she asserts that a further amendment would not have been futile because she could have alleged that flushing the Product she bought would violate the California Plumbing Code and that the Product was therefore illegal. Br. 41-44. Because neither assertion can withstand scrutiny, the district court properly refused to give Davidson yet another chance to state a viable claim.

Davidson's first argument rests on her continued mischaracterization of the district court's ruling as to the original Complaint. As discussed above, when the court noted that Davidson's original Complaint failed to allege how she came to believe the Product was not flushable, the court was pointing out the lack of any allegations of specific facts showing that a misrepresentation had been made. *See supra* at 20-30. The allegation in the Amended Complaint about her "research"

did nothing to cure that failure. *Supra* at 22. The original Complaint and the Amended Complaint fell short for the same reason, and the district court dismissed them both for the same reason. There was no new basis for dismissal.

Davidson's Plumbing Code argument is merely a rehash of her main argument that the Product she bought was misrepresented to be flushable when it was not.[12] As Davidson sees it, the Plumbing Code makes it illegal to flush any item that is capable of causing damage to a sewer system. Because wipes are "not dispersible" and "have clogged" household pipes and municipal sewer systems, that means they are capable of causing damage and thus are illegal. But the fundamental problem remains: neither complaint properly alleges that the Product Davidson bought will not make it through Davidson's "drainage system or public sewer" without causing damage. ER 65. And there are no allegations in either complaint that any Kimberly-Clark product has ever damaged a drainage system or public sewer in California. Just as she failed to allege facts that show that the "flushable" designation for the Product was false, so too she has failed to allege facts to show that flushing the Product she bought would be "illegal" in California.

---

[12] Davidson completely ignores the district court's finding that the Plumbing Code was not "newly discovered evidence" or otherwise unavailable to her counsel when the first two complaints were filed, ER 12, which is an independent basis for denying relief under Rules 59(e) and 60(b).

*See Seven Arts Filmed Entm't*, 733 F.3d at 1254 (courts need not accept the truth of "unwarranted deductions of fact" or "unreasonable inferences" on a motion to dismiss).[13] Davidson's assertion that allegations concerning the Plumbing Code are what she would add if granted leave to amend confirms that "the complaint could not be saved by amendment." *Cf. Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).[14]

---

[13] The case Davidson cites involved sales of products containing a Schedule III controlled substance, so there were no inferences, reasonable or unreasonable, required to conclude that customers who bought the product possessed a controlled substance in violation of the law. Br. 43-44 (citing *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 152 (2010)). Also, multiple cases have suggested that *Steroid Hormone* is no longer good law because the California Supreme Court has made clear that "actual reliance" is required in claims based on unlawful conduct. *See, e.g., Pratt v. Whole Foods Mkt. Cal., Inc.*, 2014 U.S. Dist. LEXIS 46409, *27 (N.D. Cal. Mar. 31, 2014) (noting that *Steroid Hormone* was decided before *Kwikset*, 51 Cal. 4th 310, and finding that "Plaintiff cannot circumvent the reliance requirement by simply pointing to a regulation or code provision that was violated by the alleged label misrepresentation, summarily claiming that the product is illegal to sell and therefore negating the need to plead reliance.").

[14] This Court in *Eminence* determined that dismissal was not appropriate based on factors absent here. In particular, the plaintiffs there had not filed "substantially similar complaints alleging substantially similar theories," and there was "nothing to suggest" that the amendments they said they could make would be insufficient. *See Eminence Capital*, 316 F.3d at 105. Here, Davidson's complaints were substantially similar and alleged the same theories, and her proffer of the Plumbing Code confirms that proposed additions to her Amended Complaint would not cure its deficiencies.

**F.    Davidson's Alleged Future Injury is Too Speculative to Confer Standing for Injunctive Relief.**

As a threshold matter, Davidson's argument that the district court erred by holding that she lacked Article III standing to pursue injunctive relief founders because of her failure to state a viable substantive claim.  Br. 44-62.  An injunction is a remedy, not a claim.  *See Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608, 625-26 (1996) (distinguishing between the rights protected and the relief sought in a case involving the CLRA and UCL).  Because Davidson failed to state a claim, she is not entitled to any remedy, and her arguments about an injunction are therefore moot.

Beyond that threshold problem, as the district court held, Davidson also lacks standing to seek injunctive relief because, even putting aside her failure to state a viable claim, she did not allege a realistic threat of future harm.  ER 22-23; ER 38-41.  On appeal, Davidson characterizes the court's holdings as based solely on the fact that Davidson would not buy exactly the same product again; she then describes this aspect of the holding as too "narrow and technical."  Br. 44-45.  But the court's conclusion that Davidson would not buy the same product again was only one step in the analysis.  The court also found that Davidson's alternative theory of a future injury was too speculative to confer standing:

> [T]he threat of future harm alleged in the [First Amended Complaint] is that Kimberly-Clark <u>might</u> redesign its product in the future, and the plaintiff <u>might</u> not know that the product has been redesigned to

be more "flushable," and that she <u>might</u> not purchase it . . .This is exactly the type of conjectural or hypothetical injury for which a plaintiff does not have standing.

ER 21-22 (emphasis in original).

Davidson asserts this holding was wrong for two reasons: (1) she alleged an inability to rely on Kimberly-Clark's labels in the future, and (2) she has a statutory right to truthful advertising. Br. 46. Neither of her arguments establishes that she has standing to seek an injunction.

> **1. Davidson's Alleged Inability to Rely on Kimberly-Clark's Advertising in the Future Does Not Constitute a Realistic Threat of Future Injury.**

To establish standing for injunctive relief in federal court, a plaintiff must allege a threatened injury that is "*certainly impending*," and "allegations of a *possible* future injury are not sufficient." *Munns v. Kerry*, 782 F.3d 402, 409 (9th Cir. 2015) (quotations and citations omitted). An alleged injury that depends on the occurrence of a hypothetical chain of events does not meet this standard. *See id.* at 409-11. Here, Davidson alleged that she would buy Kimberly-Clark's flushable wipes "if" they were truly flushable, and that they might be in the future because Kimberly-Clark "may" change the design. ER 90. Those allegations assert only a possible future injury and a hypothetical chain of events predicated on speculation that Kimberly-Clark "may" redesign its products. *See id.* The district court correctly held that such allegations do not suffice.

On appeal, Davidson asserts that she will be injured by Kimberly-Clark's actions because she "will be unable to rely" on Kimberly-Clark's labels when "making purchasing decisions" in the future.  Br. 46.  At best, this is an allegation that she will be uncertain about whether a hypothetical future product with a hypothetical label is mislabeled and that uncertainty may deter her from buying such a hypothetical redesigned flushable product.  As this Court has explained, "uncertainty" alone does not establish standing even if it deters activities in the present, because it amounts to "speculation or 'subjective apprehension' about future harm."  *Munns*, 782 F.3d at 411 (quoting *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010)); *see also Rahman v. Mott's, LLP*, 2014 U.S. Dist. LEXIS 147102, *18 (N.D. Cal. Oct. 15, 2014) ("Merely being exposed to an allegedly unlawful label is not a cognizable harm. . . . Similarly, merely feeling that one cannot trust defendant's future representations is not sufficient harm to confer standing for injunctive relief.").  Allegations that Davidson "desires" flushable wipes are also not enough to establish any imminent injury to her.[15]

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) (the professed "inten[t]"

---

[15] Not to mention that they are inconsistent with allegations in her complaints suggesting that no wipes can ever be "flushable" because only human waste and toilet paper should be flushed.  *See* ER 121-22; ER 80, ¶ 34; Dkt. 13-2 at 13, 14-15, 29, 32-33.

to return to places the plaintiff had visited before did not suffice to show "actual or imminent" injury).

Davidson contends that her situation is like that of the plaintiffs in *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181 (D.D.C. 2013), who successfully established standing to pursue injunctive relief. Br. 48-49. But the reasoning in *L'Oreal* only exposes the problems in Davidson's case. In *L'Oreal*, the plaintiffs alleged that the defendant mislabeled hair care products as "salon-only" even though they were also sold at mass-market retail stores. 991 F. Supp. 2d at 188. The court recognized that to have standing to pursue injunctive relief, the plaintiffs' allegations had to "provide concrete indications that [plaintiffs were] likely to be harmed in the future, rising above mere speculation about possible future purchases." *Id.* at 192. The *L'Oreal* plaintiffs met that standard based on "repeat past purchases, brand loyalty, allegations of ongoing purchases, and an injury unconnected to the performance of the product, [that] combine to show that future injury is likely." *Id.* at 195.

These factors are absent here. Davidson alleges just one purchase of flushable wipes; she does not allege that she was a regular purchaser of flushable wipes before this litigation; and she has not alleged any reason why she would become one now. The assertion that she regularly goes to the store wanting to buy flushable wipes is not supported by the kinds of allegations in *L'Oreal*; instead, it

is the kind of "manufactured standing" allegation that this Court does not permit.

*See Rahman*, 2014 U.S. Dist. LEXIS 147102, *17 ("Absent showing a likelihood

of future harm, a plaintiff may not manufacture standing for injunctive relief

simply by expressing an intent to purchase the challenged product in the future.");

*see also Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 868

(9th Cir. 2014) (plaintiff who said he was deterred from going to a hospital due to a

lack of accommodations but had not previously been a patient at the hospital was

"manufacturing standing" with "bald assertion, contradicted by the record").

Davidson also argues that her alleged injury should confer standing for

injunctive relief because any other result would thwart California's consumer

protection efforts. To the extent there are district court decisions that support that

argument, they are wrong.[16] First, state policy objectives cannot trump Article III.

---

[16] Br. 46-47 (citing *Ries v. Ariz. Beverages USA LLC*, 2012 U.S. Dist. LEXIS 169853 (N.D. Cal. Nov. 27, 2012), and *Weidenhamer v. Expedia, Inc.*, 2015 U.S. Dist. LEXIS 36142 (W.D. Wash. Mar. 23, 2015)). *Ries* and *Weidenhamer* are also more like *L'Oreal* because the plaintiffs in those cases did not allege that the product did not work or disclaim an interest in buying the product in the future. *Ries* involved allegations that a beverage was misrepresented as "natural" because it included high fructose corn syrup, but the plaintiffs alleged that they bought the product for a variety of reasons including taste and did not disclaim their interest in the product. *See Ries,* 2012 U.S. Dist. LEXIS 169853, **23-24. *Weidenhamer* involved allegations that a travel website misled the plaintiff about discounts, but the plaintiff intended to keep using the website because it worked for his purpose of booking travel. *See Weidenhamer*, 2015 U.S. Dist. LEXIS 36142, **12-14. In contrast, Davidson alleges that the only reason she bought the Product is because

*See Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001) ("A plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court.").  The Supreme Court has explicitly cautioned that an "assumption that if [a plaintiff] has no standing to sue, no one would have standing, is not a reason to find standing." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1154 (2013) (quotations and citations omitted).  Second, it is not true that plaintiffs in false advertising cases will never be able to assert standing for injunctive relief if they are held to federal standing requirements.  *L'Oreal* demonstrates that plaintiffs can seek injunctive relief on the basis of plausible allegations of concrete continuing or future harm.

On appeal, Davidson makes an argument based on *Erie v. Tompkins.*  Br. 50.  She did not raise that argument below, so it is waived on appeal.  *See  K. W. v. Armstrong*, 789 F.3d 962, 974 (9th Cir. 2015).  It is also unavailing.  *Erie* expressly holds that state law should be applied "except in matters governed by the Federal Constitution or by acts of Congress." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78

---

she wanted a flushable product—indeed, once she developed her "concern" regarding flushability, she stopped using the Product altogether, rather than using it as a non-flushable wipe and disposing of it in the trash (ER 89).  As the district court held, having alleged that the Product is not flushable, Davidson has made clear that she has no reason to buy the Product again. ER 22-23.

(1938). A plaintiff's standing to pursue injunctive or any other relief in federal court is governed by the Constitution.[17] *Hangarter v. Provident Life and Acc. Inc. Co.*, 373 F.3d 998, 1022 (9th Cir. 2004) (vacating an injunction in a case involving the UCL because federal courts are limited by Article III "[e]ven if" California state law would permit plaintiff to act on behalf of the public as a "private attorney general"). There is also no reason for CAFA's removal provisions to change the analysis. Br. 52. CAFA reflects congressional intent to make federal courts a forum for certain kinds of cases. *See Dart v. Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 550 (2014) ("Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court."). Nothing in CAFA suggests that Congress wanted to change (or could change) how federal courts evaluate claims for injunctive relief in cases removed under CAFA. Davidson did not satisfy the constitutional requirements for pursuing injunctive relief in federal court.[18]

---

[17] This is not a case like *In re Cnty. of Orange*, 784 F.3d 520, 531 (9th Cir. 2015), in which this Court held that "absent a Federal Rule or law" a state's requirements for a jury waiver could apply as long as the requirements are *higher* than the constitutional minimum. *See id.* at 527; *cf.* Br. 53. Here, there are well-established constitutional standards that apply, and Davidson is asking the Court to apply a standard *lower* than the constitutional minimum.

[18] In a footnote, Davidson suggests this Court could remand "the injunctive relief claim" to state court. Br. 53 n.11. This suggestion, which Davidson failed

The question presented here is not whether injunctive relief is always or never available in a false advertising case; the question is whether Davidson met the well-established standing requirements in this case. She did not. Even if it were necessary to do so to decide this case (and it is not), resolving the split in the district courts (*see* Br. 49 n.10) would simply require reiterating established standards and reminding lower courts that they are constitutionally bound to apply those standards to the facts of each case. Mere speculation that the plaintiff might suffer some harm in the future is not sufficient to support a claim for injunctive relief in federal court. *See Smith v. SEC*, 129 F.3d 356, 363 (6th Cir. 1997) (en banc) (citing *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983)).

---

properly to present below (ER 5-7), ignores the fact that an injunction is a remedy, not a claim. *Saridakis v. JPMorgan Chase Bank*, 2015 U.S. LEXIS 16751, *4 (C.D. Cal. Feb. 11 2015); *Olsen*, 48 Cal. App. 4th at 626. *Machlan* is the only case Davidson cites that ordered a remand in a situation like this one. Br. 53-54 n.11 (citing *Machlan v. Procter & Gamble Co.*, 77 F. Supp. 3d 954, 961 (N.D. Cal. 2015)). A more recent district court decision described *Machlan's* holding as "unworkable" and correctly noted that "subject matter jurisdiction does not bow to state interests." *Mezzadri v. Medical Depot, Inc.*, 2015 U.S. Dist. LEXIS 91620, **11-12 (S.D. Cal. July 1, 2015). It is particularly nonsensical to remand only the injunction portion of Davidson's claims because her alleged future injury does not involve resulting economic harm and the statutes under which Davidson sues all have an economic harm requirement; mere exposure to false advertising is not enough. *See* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1780; *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009) ("[I]n order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result.").

### 2. Davidson Does Not Have Standing to Seek Injunctive Relief Based on an Alleged Statutory Right to Truthful Advertising.

Davidson's final argument is that she has standing to seek injunctive relief because she has a state law statutory right to "receive truthful advertising," and Kimberly-Clark "threaten[s]" to invade that right. Br. 54. This argument fails for three reasons.

First, Davidson exaggerates the scope of the statutes under which she sues. In her words, she has a "statutory right [] to receive truthful information, or to put it another way, not to be subjected to Defendant's false advertising and labeling, regardless of whether Plaintiff knows or suspects it is false." Br. 58. But the FAL, CLRA, and UCL do not confer an abstract or unlimited right on all citizens to "receive truthful information," because they expressly require that a private citizen must suffer the loss of "money or property" as a result of false advertising to bring a claim. *See* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1780; *Meyer*, 45 Cal. 4th at 641 ("[I]n order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result"); *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009) (representative plaintiff must demonstrate "actual reliance" on a misrepresentation in accordance

with fraud principles).[19]  As Davidson describes her allegations of future harm, they "show that Plaintiff will continue to be exposed to Defendants' deceptive advertising," and not that she will rely on the advertising and suffer a loss of money or property as a result.  Br. 58.  The California statutes under which she sues cannot be "understood as granting persons in the plaintiff's position a right to judicial relief."  *Fulfillment Servs. Inc. v. UPS*, 528 F.3d 614, 619 (9th Cir. 2008).

Second, Davidson's alleged injury is not particular to her.  Even when the legislature creates a statutory right, a plaintiff must show that she has "alleged such a personal stake in the outcome of the controversy as to warrant [her] invocation of federal court jurisdiction."  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982) (quotations and citations omitted).  "Statutory broadening of the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury."  *Lujan*, 504 U.S. at 578 (quotations and citations omitted); *see*

---

[19] These requirements were added because California's previously more liberal consumer protection laws had been "misused by some private attorneys who file frivolous lawsuits as a means of generating attorneys' fees without corresponding public benefit," even when their clients had no economic injuries.  *In re Tobacco II Cases*, 46 Cal. 4th at 316 (quotations and citations omitted).  In light of the specific amendments to limit the reach of California law, it would be inappropriate to allow plaintiffs to use these statutes to expand their rights in federal court to include seeking redress for the "injury" of being "exposed" to false advertising.

*also Fraley v. Facebook*, 830 F. Supp. 2d 785, 796 (N.D. Cal. 2011) ("[A] plaintiff may be able to establish constitutional injury in fact by pleading violation of a right conferred by statute, so long as she can allege that the injury she suffered was specific to her.") (citing *Warth*, 422 U.S. at 501). The alleged invasion of Davidson's purported right to truthful information is not specific to her; her one past purchase of flushable wipes does not distinguish her from any other shopper who is exposed to false advertising generally.

The cases Davidson cites do not set such a low bar for alleging a "personal stake" in the outcome of a case. Br. 60-62. On the contrary, each of those cases involved plaintiffs who alleged not only that they were "exposed" to conduct that violated their statutory rights, but also that they had personally been the "object" of a violation. *Robins v. Spokeo*, 742 F.3d 409, 413 (9th Cir. 2014) (plaintiff alleged the specific misinformation about him that was contained in defendant's database and demonstrated his "personal interests in the handling of his credit information"), *cert. granted*, 135 S. Ct. 1892 (2015); *Tourgeman v. Collins Fin. Servs. Inc.*, 755 F.3d 1109, 1117 (9th Cir. 2014) (plaintiff alleged that defendants made false representation in the letters they sent to him in connection with an effort to collect a purported debt from him and that he was the "target" of misleading debt collection communications); *Havens Realty*, 455 U.S. at 374 (holding that black "tester" who personally asked to rent an apartment was "the

object of a misrepresentation" with standing under the Fair Housing Act, but white

tester who was not the "victim of a discriminatory misrepresentation" lacked

standing to sue for his alleged deprivation of the "benefits of interracial

association"); *Fulfillment Servs.*, 428 F.3d at 619 (plaintiff freight carrier alleged

that it had been "subjected to an unlawful tariff"); *Edwards v. First Am. Corp.*, 610

F.3d 514 (9th Cir. 2010) (plaintiff alleged that her title insurance was referred to

the defendant under an agreement that was illegal under the Real Estate Settlement

Procedures Act). *See also Bell v. City of Kellogg*, 922 F.2d 1418, 1422 (9th Cir.

1990) ("[F]ederal courts are not forums for hearing generalized grievances by

taxpayers and citizens, and a party must assert his own rights, not those of

others.").[20]

In a footnote, Davidson cites *Fraley*, 830 F. Supp. 2d 785, for the

proposition that a violation of a state statute can create an injury for Article III

purposes, but that case only highlights the problems with Davidson's allegations

and arguments. Br. 55 n.12. In *Fraley*, the plaintiffs alleged that the defendant

---

[20] In the context of suits against the government, courts are clear that suits resting
on "generalized grievances" are impermissible because "the impact on the plaintiff
is plainly undifferentiated and common to all members on the public." *Lujan*, 504
U.S. at 575 (quotations and citations omitted). The situation is the same when a
consumer who has not differentiated herself from any other consumers has a
general grievance against the manufacturer of a consumer product; a consumer
cannot have Article III standing without alleging an injury particular to her.

violated a state statute by using their names and likenesses to sell products without their consent, and also that they were injured because they were denied compensation for the unauthorized use. 830 F. Supp. 2d at 797. The court found that they alleged Article III standing not merely because they alleged an invasion of a state-created right, but also because they alleged that they personally suffered resulting economic harm. *Id.* The allegations of harm personal to them included allegations of what information the defendant used, to whom the information was published, and additional specific facts "showing that their personal endorsement has concrete, measurable, and provable value." *Id.* at 800. The *Fraley* court explained that the presence of these facts distinguished those plaintiffs from plaintiffs in other cases in which courts found Article III standing lacking under the same California statute. *Id.* at 798-800. Davidson is therefore wrong to suggest that *Fraley* means that the invasion of a state statutory right without more necessarily creates a cognizable Article III injury; the case shows that even where a state statutory right is identified, a court must test whether the facts of the case establish a sufficient injury under Article III. Davidson's facts did not pass that test.

Finally, the question here is not whether Davidson has a "right" to sue under the UCL, FAL, or CLRSA, but whether her right to sue under those statutes confers the right to a particular remedy in federal court. *See Olsen*, 48 Cal. App.

4th at 625-26; *Mezzadri*, 2015 U.S. Dist. LEXIS 91620, *11. It does not. *See Hangarter*, 373 F.3d at 1022 (district court erred in granting injunctive relief under the UCL "[e]ven if" such relief would be available in state court because the plaintiff was not personally threatened by any future conduct); *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001) (taxpayers could not sue for an injunction under state statute prohibiting government waste and improper gifts because their taxpayer status did not suffice under Article III even if it would be sufficient in state court); *Mason v. Nature's Innovation, Inc.*, 2013 U.S. Dist. LEXIS 68072, **8-9 (S.D. Cal. May 13, 2013) ("[E]ven if the CLRA, UCL, and/or FAL allow a plaintiff to seek injunctive relief on behalf of the public regardless of whether the plaintiff is likely to suffer future harm himself, as a *federal* court, this Court must make sure that the threshold requirements imposed by Article III are satisfied.") (citing *Lyons*, 461 U.S. at 101 ("It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy.")). Whatever Davidson's rights under state law, her claims in federal court must satisfy Article III. Her claim for injunctive relief does not.

## VIII. CONCLUSION

For the foregoing reasons, Kimberly-Clark respectfully requests that this Court affirm the district court's judgment dismissing Davidson's claims with prejudice.

Dated: February 19, 2016          Respectfully submitted,

                                    SIDLEY AUSTIN LLP

By: /s/Constantine L. Trela, Jr.

       Constantine L. Trela, Jr.
       One South Dearborn
       Chicago, IL 60603

       Michelle Goodman
       Amy Lally
       555 West Fifth Street
       Los Angeles, CA 90013

       Naomi Igra
       555 California Street,
       Suite 2000
       San Francisco, CA 94104

       Attorneys for Defendants-Appellees

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Defendants-Appellees state that they are not aware of any related cases pending in this Court.

## CERTIFICATE OF COMPLIANCE WITH
## FRAP 32(A)(7)(C) & CIRCUIT RULE 32-1

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1, the attached answering brief is proportionally spaced, has a typeface of 14 points or more, and contains 13,348 words.

s/Constantine L. Trela, Jr.
*Counsel for Defendants-Appellees*
February 19, 2016

**CERTIFICATE OF SERVICE**

I, Constantine L. Trela, Jr., a member of the Bar of this Court, hereby certify that on February 19, 2016, I electronically filed the foregoing "Brief of Defendants-Appellees" with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Constantine L. Trela, Jr.
*Counsel for Defendants-Appellees*